UNITED STATES of America, Plaintiff,

v.

John GERVASI, Michael Ettinger, and
Charles Soteras, Defendants.

No. 82 CR 635.

United States District Court,
N.D. Illinois, E.D.

March 16, 1983.

Candace Fabri, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Edward J. Egan, Samuel V.P. Banks, Edward Genson, Jeffrey B. Steinback, James I. Marcus, George J. Murtaugh, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

The August 1982 Grand Jury returned a seven count indictment against the defendants John Gervasi ("Gervasi"), Michael Ettinger ("Ettinger"), and Charles Soteras ("Soteras"), charging violations of 18 U.S.C. §§ 371, 1343 and 1952. Gervasi and Ettinger are attorneys admitted to practice in the State of Illinois. In 1977, Soteras was a defendant in a criminal case in the Circuit Court of Cook County, charged with car theft. Gervasi and Ettinger represented Soteras on the car theft charge.

The federal indictment alleges that the three defendants conspired to bribe a police officer, Daniel Furay ("Furay"), to arrange for the dismissal of the car theft charges against Soteras. The defendants have filed a number of pretrial motions attacking the indictment, and also have moved to suppress key evidence in the case. All of the parties have filed excellent briefs in support of their positions. The Court rules on these motions as follows.

### I. *Vindictive Prosecution*

#### A. *Facts*

The defendants have moved to dismiss the indictment on grounds of vindictive prosecution. The facts are complex, and present a nest of Chinese boxes composed of three separate prosecutions. The Court describes them here in as brief a fashion as possible.[1]

Soteras was charged with car theft in October, 1977. One of the arresting officers was Furay. It is alleged that shortly after the arrest, attorney Gervasi approached Furay to discuss the Soteras case. Furay believed that Gervasi might offer a bribe, and contacted the office of the Cook County State's Attorney ("state's attorney").

---

1. The facts were adduced at a hearing held in this cause on February 25, 1983, at which stipulated testimony and exhibits were offered and received (though certain exhibits were received subject to the parties' objections), and the Court took judicial notice of certain proceedings in other courts.

During the next two months, in-person meetings and telephone conversations between Furay and Gervasi, and telephone conversations between Furay and Ettinger, were overheard and transcribed by court reporters and agents of the state's attorney. The state's attorney did not seek a court order authorizing the transcription of these conversations for two reasons: (1) the assistant state's attorney ("ASA") spearheading the investigation believed that the method employed (overhearing the telephone conversations with the mouthpiece of the telephone removed) did not violate the state eavesdropping law; and (2) Gervasi was being considered at the time for a position as an associate circuit judge of Cook County, and the ASAs feared the undercover operation might be disclosed if they approached a sitting circuit judge for authorization.

As a result of the investigation, Gervasi and Ettinger were indicted in February, 1978 by a Cook County grand jury, and charged with eleven counts of bribery and conspiracy. They faced a maximum total sentence of 59 years incarceration.

The Honorable R. Eugene Pincham, circuit court judge, presided over the case. Gervasi and Ettinger moved to suppress evidence of the overheard and transcribed conversations with Furay, and Judge Pincham granted the motion. The state appealed the ruling, and the appellate court affirmed in part and remanded in part. *People v. Gervasi*, 90 Ill.App.3d 1117, 46 Ill.Dec. 369, 414 N.E.2d 91 (1st Dist.1980). The state further appealed this decision, and in April, 1982, the Illinois Supreme Court affirmed in part and reversed in part. *People v. Gervasi*, 89 Ill.2d 522, 61 Ill.Dec. 515, 434 N.E.2d 1112 (1982).

In its decision, the court held that since "one party to the conversations had consented to the monitoring, neither the Federal Constitution, nor the constitution of this State was offended." 61 Ill.Dec. at 517–518, 434 N.E.2d at 1114–15. However, the court also held that the Illinois Eavesdropping Statute, Ill.Rev.Stat. 1977, ch. 38, §§ 14–1 and 14–5, had been violated and

evidence obtained in violation of Illinois law had to be suppressed. The effect of the rulings was to make inadmissible the bulk of the state's evidence.

The case was remanded to the circuit court for trial. Since the defendants had requested a bench trial, their inalienable right under Illinois law, Judge Pincham was to be the factfinder. On August 25, 1982, five days before the case was to be called for trial, the state moved for clarification of Judge Pincham's earlier suppression order. The ASAs wished to determine whether the suppressed materials could be used to prepare witnesses for trial, and could be used at trial to refresh witnesses' recollections of the events which had taken place nearly five years before. Judge Pincham ruled that the suppressed evidence could not be used for such purposes. The state did not seek leave to appeal.

The ASAs thereupon contacted the federal prosecutors to discuss the case. The federal prosecutors were told that, given Judge Pincham's rulings, in the opinion of the ASAs the state case against Gervasi and Ettinger was unproveable. The federal prosecutors studied the state prosecution file, and attempted to obtain additional information through federal grand jury subpoenas but were unable to do so.

After further consideration, the federal prosecutors decided that there was a jurisdictional basis to proceed with a federal prosecution and that such a prosecution was warranted. The evidence obtained from the state was presented to a federal grand jury, and on September 14, 1982 an indictment was returned under which the defendants faced a maximum total sentence of 35 years incarceration. The state had moved before Judge Pincham to *nolle prosse* the state charges, which motion was granted, three hours earlier. The federal statute of limitations would have expired on November 28, 1982, ten weeks after the federal indictment was handed down.

At the hearing held by this Court on February 25, 1983, the defendants offered as an exhibit the deposition testimony of attorney Joseph M. Macellaio. In his depo-

sition, Macellaio described a conversation he had with attorney Dennis Dernbach sometime in September, 1982, in a bar near the criminal courts building at 2600 South California, Chicago. Dernbach had been one of the ASAs prosecuting the case of Gervasi and Ettinger. Macellaio testified that Dernbach told him the reason the Gervasi case was sent over to federal court was that the state "couldn't get a fair shake ... from Judge Pincham", and that "We can try our case over there better than we can in front of Judge Pincham" (Macellaio Dep., at 6).[2]

The defendants presented to this Court exhibits and argument to the effect that in numerous recent instances the state's attorney has dropped state prosecutions before Judge Pincham in favor of federal prosecutions for the same essential conduct. Further, the defendants charged that in one case the state's attorney brought an unprecedented motion designed to force Judge Pincham to recuse himself. The motivation of the state's attorney, according to the defendants, is to take criminal cases away from Judge Pincham because he has the reputation of being a "defendant's judge."

The defendants allege several theories in support of the motion to dismiss for vindictive prosecution:

1. The federal prosecution was designed and motivated to penalize these defendants for their state court success in exercising their statutory and constitutional rights.

2. The institution of a federal prosecution under such circumstances will deter other defendants from exercising their rights.

3. The prosecution is an attempt to avoid and make meaningless these defendants' rights to the greater procedural and substantive protections afforded by Illinois law, including the right to a trial by the court without a jury, and the protection of the more stringent state standards as to the admissibility of overheard conversations.

4. The prosecution is an attack on the integrity of the judiciary of the Circuit Court of Cook County.

5. The prosecution of these defendants now in federal court, after they have run the gauntlet for five years in state court, is inherently unfair and a violation of due process.

## B. Presumptions and Procedures

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Supreme Court held that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982), quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978). In *Pearce* the Court found the appearance of judicial vindictiveness when a defendant, having successfully won a new trial on appeal, received a greater sentence upon retrial and conviction. *Blackledge* was a case of the appearance of prosecutorial vindictiveness where a defendant was charged with a higher offense upon his exercise of his state statutory right to a trial *de novo* after a conviction in an inferior court.

The most recent statement by the Supreme Court on the issue of prosecutorial vindictiveness came in *United States v. Goodwin, supra.* In *Goodwin,* the defendant initially was charged with a federal misdemeanor. After exercising his right to trial by jury in the district court rather than trial to a magistrate (who at that time was not empowered to preside over a jury), a different prosecutor reviewed the file and

---

**2.** The government objected to the admission of this exhibit on grounds of hearsay and relevancy, and the Court received the exhibit subject to objection. Though defense counsel urged that this was an admission of a party and therefore not hearsay, declarant Dennis Dernbach is not a party nor an agent of a party (the United States, not the State of Illinois, is a party) and the statements would seem to be hearsay. Nevertheless, for purposes of deciding the important issues presented here the Court has admitted the exhibit.

obtained a felony indictment from a grand jury. The defendant was convicted of the felony charge, and on appeal asked that the felony conviction be reversed on grounds of prosecutorial vindictiveness.

The United States Court of Appeals for the Fourth Circuit reversed the felony conviction, finding that there was an appearance of prosecutorial vindictiveness in the government's raising the charges after the defendant demanded a trial by jury. 637 F.2d 250 (4th Cir.1981). The court found a due process violation even though on the record, it "readily conclude[d] that the prosecutor did not act with actual vindictiveness in seeking a felony indictment." *Id.* at 252.

The Supreme Court reversed. At the outset, the Court said: "This case involves presumptions." 102 S.Ct. 2485, 2487. *Goodwin* was held to be distinguishable from *Blackledge.* In *Blackledge,* the prosecution "upped the ante" by raising the charges upon the successful exercise, *after a complete trial,* of the defendant's right to appeal. In *Goodwin,* the heavier charges were brought in a *pre-trial* setting after the defendant demanded a jury. The Court noted that

> a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. *Defense counsel routinely file pretrial motions to suppress evidence;* to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to Government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

*Id.* 102 S.Ct. at 2493 (emphasis added).

The Court found that no presumption of prosecutorial vindictiveness would lie in *Goodwin* because the facts did not "pose a realistic likelihood of 'vindictiveness.'" *Id.* 102 S.Ct. at 2494, quoting *Blackledge, supra,* 417 U.S. at 27, 94 S.Ct. at 2102. Fur-

ther, the Court set forth standards for deciding all questions of prosecutorial vindictiveness. If a presumption does lie (as it did in *Pearce* and *Blackledge* ), the offending party (the sentencing judge in *Pearce;* the prosecutor in *Blackledge* ) must come forward with objective evidence to rebut the presumption of vindictiveness. *Goodwin, supra,* 102 S.Ct. at 2489, 2490 n. 8. If a presumption does not lie (as in *Bordenkircher,* and *Goodwin* itself), then the defendant must come forward with objective evidence proving "that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Id.* at 2494. *See also Id.* at 2492 n. 12; 2494 n. 19. Since in *Goodwin* no presumption would lie and the Fourth Circuit found no "actual vindictiveness", no due process violation was established.

■ In an unpublished Order of January 26, 1983, this Court granted defendants' request for a hearing on the motion to dismiss the indictment on grounds of prosecutorial vindictiveness. In this Order, the Court laid out ground rules for the hearing. First, the Court held that the facts presented in the briefs submitted by the parties showed that no presumption of prosecutorial vindictiveness would lie in this case. Two independent sovereigns—the state of Illinois and the United States—brought distinct prosecutions. Each sovereign had the power to make prosecutorial decisions without regard to the decision of the co-existing sovereign. *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). *And see United States v. DeMichael,* 692 F.2d 1059, 1061–62 (7th Cir.1982) (no reasonable likelihood of prosecutorial vindictiveness where separate sovereigns institute their own prosecutions); *United States v. Robison,* 644 F.2d 1270, 1273 (9th Cir.1981) (the involvement of separate sovereigns tends to negate a vindictive prosecution claim). *And compare Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (possibility of vindictiveness *de minimis* when a new

sentence is imposed by different jury upon retrial); *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (possibility of vindictiveness does not inhere where superior court imposes more severe sentence after conviction in trial *de novo;* separate sentencing judges negates likelihood of vindictiveness).

Further, the "response" to the defendants' motion to suppress occurred pre-trial, *cf. Goodwin, supra,* 102 S.Ct. at 2493; and the maximum penalty the defendants faced on the federal charges was less than that under the state indictment. In sum, the facts do not pose a realistic likelihood of vindictiveness. *Blackledge.*

Second, the Court instructed that the defendants, who labored without a presumption in their favor, would have the burden of persuasion on the motion and that they would have to tender objective evidence to prove that actual vindictiveness motivated the prosecutor. *Goodwin, supra,* at 2494 n. 19. The Court stated that at the hearing on the motion, "the parties will not be permitted to probe the subjective motives of those instigating the instant prosecution."[3]

### C. *Actual Vindictiveness*

The defendants argue that the indictment in this cause should be dismissed on grounds of prosecutorial vindictiveness. At the hearing in this matter, defense counsel made clear to the Court that their argument is not with the counsel for the federal government in this case, who they believe to be most honorable and ethical attorneys. Instead, they claim that the assistant state's attorneys have acted outrageously, have punished the defendants for their assertion of their statutory and constitutional rights, and have broken the law in their attempts

to see these defendants convicted. In support of their motion, the defendants rely on *United States v. Krezdorn,* 693 F.2d 1221 (5th Cir.1982); and *United States v. Burt,* 619 F.2d 831 (9th Cir.1980).

In *Krezdorn,* the defendant was tried for forging immigration documents and was convicted on several counts by a jury. On appeal the Fifth Circuit reversed, holding that evidence of 32 additional forgeries not charged in the indictment should not have been admitted under Fed.R.Evid. 404(b). *United States v. Krezdorn,* 639 F.2d 1327 (5th Cir.1981). The government then reindicted the defendant on the counts he had been convicted of, and added a new conspiracy count as well. The additional forgeries which had been found inadmissible by the court of appeals were alleged now as the overt acts in the conspiracy count. The district court granted the defendant's motion to dismiss the conspiracy charge on grounds of prosecutorial vindictiveness and the Fifth Circuit affirmed.

■ *Krezdorn* is a case squarely in the *Blackledge* mold: where the defendant successfully appeals his conviction and the prosecution brings increased charges on retrial, a presumption of prosecutorial vindictiveness will lie. The burden is then placed upon the prosecution to rebut the presumption through the presentation of objective evidence. The government was unable to rebut the presumption in *Krezdorn,* so the conspiracy count was dismissed. Though *Krezdorn* is an intelligent discussion of the issues of prosecutorial vindictiveness, applying the precepts of *Blackledge* and *Goodwin* in workmanlike fashion, it is not a remarka-

---

**3.** This limitation on the kind of hearing permissible after *Goodwin* comports with the basis for the prophylactic rule set out in *Blackledge* and re-echoed in *Goodwin* itself: "Motives are complex and difficult to prove." *Goodwin, supra,* at 2489. Whether the presumption is with the defendant or the government, at a hearing on a motion to dismiss for vindictive prosecution the Court cannot allow a prosecutor to come to the witness stand and testify as to subjective motivation, whether that testimony is voluntary or drawn out through cross-examination. The

Fourth Circuit recognized this in *Goodwin, see* 637 F.2d at 254 n. 1, and established a presumption to make certain that these questions are decided on the basis of objective evidence. The Supreme Court reversed in *Goodwin* based on where the Fourth Circuit thought the presumption line should be drawn. The reversal did not undercut the Fourth Circuit's conclusion as to the necessity for presumptions and limitations to objective evidence in such matters.

ble case. It also is not helpful [4] to the defendants here, since in *Krezdorn* actual vindictiveness was presumed, while in the case at bar the defendants must prove that the prosecution acted with actual vindictiveness. *Goodwin, supra,* 102 S.Ct. at 2495.

The second case relied on by the defendants also does not particularly aid them in establishing their right to relief here. In *Burt,* California authorities investigated and initiated prosecutions of defendants allegedly responsible for a large-scale drug manufacturing and distributing operation. Criminal charges were brought in state court in March, 1979. In April of the same year, the state law enforcement authorities met with federal officers (agents of the Drug Enforcement Administration and assistant United States attorneys) to discuss the possibility of the federal government's taking over the prosecutions. By June, 1979, the state and federal authorities had agreed that the defendants would be prosecuted by the federal government.

In July, 1979, one of the defendants prevailed in state court on his motion to suppress evidence based on faulty search warrants, and the state prosecutor (who had

---

**4.** In fact, *Krezdorn* undercuts a position urged by these defendants. At argument, defense counsel urged that the Court should focus not on the "pure heart" of the prosecutors, but on the apprehension experienced by the defendants which could result in defendants foregoing the exercise of rights. Yet the *Krezdorn* court focused on the defendant's perception rather than the prosecutor's "pure heart" only because it was a case where the presumption of vindictiveness would lie. That is not the case here.

There has been debate and uncertainty about whether a court, in resolving charges of prosecutorial vindictiveness, should look to the actions of the prosecutor or the perceptions of the defendant. *See Note, Evaluating Prosecutorial Vindictiveness Claims in Non-Plea-Bargained Cases,* 55 S.Cal.L.Rev. 1133, 1150–52 (1982). The Supreme Court has given seemingly conflicting directives:

> [S]ince the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the [prosecutor].

*Blackledge, supra,* 417 U.S. at 28, 94 S.Ct. at 2102, quoting *North Carolina v. Pearce, supra.* This would seem to indicate the perception of the defendant is key.

Yet the Court said in *Bordenkircher, supra,* 434 U.S. at 363, 98 S.Ct. at 667–668:

> The due process violation in cases such as *Pearce* and [*Blackledge*] lay not in the possibility that a defendant might be deterred from the exercise of a legal right, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction.

This would seem to mean that the danger lies in permitting the prosecutor to retaliate against a person "because he has done what the law plainly allows him to do," *Bordenkircher, supra,* at 363, 98 S.Ct. at 668, an action of the executive which the judiciary may not tolerate.

*Krezdorn* adds a bit to the confusion by setting out a kind of shifting focus.

> It follows that when a prima facie case of prosecutorial vindictiveness is created ..., rebuttal explanations focusing on the prosecutor's lack of subjective retaliatory motivation are irrelevant. Since our focus is on the defendant's perception, rather than the prosecutor's "pure heart," a prima facie case of prosecutorial vindictiveness can be overcome only by a showing [of objective facts demonstrating that the prosecutor did not act with vindictiveness.] ... Evidence that the Assistant United States Attorney harbored no subjective animus or ill will toward the defendant will not be sufficient.

*Krezdorn, supra,* at 1229–30. This is so because in a *Blackledge* or *Krezdorn* type of case, "the prosecutor's decision has a chilling, even arctic, effect" on the defendant's decision to avail himself" of basic procedural rights. *Id.* at 1231.

This Court believes that *Goodwin,* a "case [which] involves presumptions," *Goodwin, supra,* 102 S.Ct. at 2487, shows that the seemingly conflicting messages of *Blackledge* and *Bordenkircher* are harmonious. There always must be a finding of actual vindictiveness, for it is this improper governmental activity which is prohibited by due process. *See Goodwin, supra,* at 2495. The ways of finding actual vindictiveness, however, differ according to the facts of each case. Where a presumption of vindictiveness will lie because the facts pose a realistic likelihood of vindictiveness, *Blackledge, supra,* 417 U.S. at 27, 94 S.Ct. at 2102, actual vindictiveness is presumed to exist (and may, of course, be rebutted by a proper showing from the government). Where no presumption will lie, the defendant must prove actual vindictiveness. *Goodwin, supra,* 102 S.Ct. at 2495. The defendant's reasonable fears and perceptions are taken into account at the outset as one of the factors a court considers when it decides whether, on the objective facts before it, the presumption will lie.

not been informed of the decision to turn over the prosecutions to federal authorities) asked that the charges be dismissed. In October, 1979, the other defendants filed motions to suppress in another California court and the state prosecutor moved to dismiss these charges as well. The defendants had not been informed of the agreement between the state and federal authorities.

When a federal grand jury returned an indictment in January, 1980, exposing the defendants to more severe penalties than those they had faced in state court, the defendants moved to dismiss on grounds of vindictive prosecution. The district court denied the motion, and the defendants took an interlocutory appeal to the Ninth Circuit[5] where the denial of the motion was affirmed.

The *Burt* court mentioned but did not decide two initial issues. First, it noted that no case had dismissed an indictment on grounds of vindictive prosecution where two separate sovereigns initiated prosecutions. 619 F.2d at 837. Second, the court did not address whether a presumption of vindictiveness would lie on the facts of that case, but assumed that even if a presumption would lie, "the government successfully rebutted any possible inference of vindictiveness which could have arisen on the facts of this case." *Id.* The court found that the decision to proceed with a federal prosecution was made prior to the exercise of procedural rights by the defendants. Furthermore,

> there was no attempt to circumvent what the defendants refer to as the more liberal California law.
>
> There is absolutely no evidence (nor even an assertion) of a retaliatory motive based upon any prior dealings between the state prosecutor and the defendants and their counsel.

*Id.* at 838.

*Burt* is of limited support to these defendants, if it is of any support at all. First, since handing down *Burt* the Ninth

Circuit has expressed further doubt on the possibility of a vindictive prosecution claim succeeding when there are separate sovereigns initiating the prosecutions.

> We have previously expressed doubt as to whether a prosecution could be condemned as "vindictive" when the defendant's claim is that one sovereign is punishing him for rights he asserted against a different sovereign. *Burt, supra,* 619 F.2d at 837. Though we do not now hold that a second prosecution can never be vindictive when it follows a successful defense in a foreign jurisdiction, we do hold that the involvement of separate sovereigns tends to negate a vindictive prosecution claim.

*United States v. Robison,* 644 F.2d 1270, 1273 (9th Cir.1981).

Second, the *Goodwin* Court expressly held that the pretrial exercise of a procedural right, such as the "routine[ ] fil[ing of] pretrial motions to suppress evidence," *Goodwin, supra,* 102 S.Ct. at 2493, does not raise a presumption of prosecutorial vindictiveness. Thus the two key predicates for the Ninth Circuit's even addressing the issue in *Burt* have been undercut.

Third, in *Burt* the court held that the defendants had not made out a claim for prosecutorial vindictiveness, and the denial of the motion to dismiss was affirmed. The language which would seem to support defendants' legal theory in the case at bar—that there had been no attempt to circumvent the more liberal state law, and that there had been no assertion nor any evidence of a retaliatory motive based upon the dealings between the state prosecutors and defense counsel—is dicta.

Finally, and most important, is the fact that the dicta in *Burt* merely lays the foundation for a legal theory: if all the necessary facts were proven to support the theory, the indictment should be dismissed on grounds of vindictive prosecution. But "[j]ust as no two snowflakes are alike, each claim of prosecutorial vindictiveness gives

---

**5.** In *United States v. Hollywood Motor Car,* —— U.S. ——, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982), the Court held that the denial of such a motion is not an appealable interlocutory order.

rise to a different analysis based on the unique facts of the individual case." *Krezdorn, supra,* 693 F.2d at 1227. The defendants still must prove the essential facts to support their motion. And in this case, they must prove that the prosecution was motivated by actual vindictiveness.

■ The defendants have failed to meet their burden. They have shown that the ASAs contacted the federal prosecutors after the state received an adverse pre-trial ruling from Judge Pincham, and that the federal prosecutors were told the state case was unproveable. The defendants have asked this Court to find that in fact the case was not unprovable (there existed material which had not been suppressed which could be used to refresh the witness' recollection), and that the state could have taken an appeal from Judge Pincham's pre-trial ruling but chose not to do so.[6] This, the defendants say, shows an inference that the state prosecutors acted with actual vindictiveness.

Also probative of the vindictiveness of the state's attorney, claim the defendants, are the initial refusal of the ASAs, based on the fear of "judicial leaks," to seek a proper authorization from a state judge; the pattern of the state dropping prosecutions in cases before Judge Pincham and turning over the matters to federal authorities; and the motion filed by the state in another case to have Judge Pincham recuse himself because he had made remarks and rulings demonstrating that he was a "defendant's judge." These raise the inference, according to the defendants, that the state wanted to strip them of their more liberal rights under the state constitution and case law.

The defendants' "direct evidence" of vindictiveness is the deposition testimony of Macellaio. This testimony was to the effect that the state prosecutors dropped their case and asked federal authorities to prosecute in order to get the case away from Judge Pincham. The Court expresses some doubt about the reliability of this testimony given the fact that neither the demeanor nor trustworthiness of either Macellaio or Dernbach could be evaluated from the cold deposition transcript presented as an exhibit. Further, Dernbach has not been examined as to whether he admits or denies the substance of this barroom conversation.[7]

In any case, all the evidence presented by the defendants, both direct and circumstantial, is legally irrelevant to the vindictive prosecution claim. They have not proven that the *federal* prosecutors acted with *actual vindictiveness* in seeking the federal indictment. And the defendants have admitted that they do not seek to prove actual vindictiveness on the part of the federal prosecutors, but instead ask this Court to find such vindictiveness by the state's attorney.

■ Vindictive prosecution is a defense brought under the due process clause of the Fifth Amendment. The guarantee that no person shall "be deprived of life, liberty, or property, without due process of law" is a limitation placed upon the federal government.[8] Except in certain limited circum-

---

**6.** The Court notes that the question as to whether the state could have appealed the ruling is unclear. In a hearing before Judge Pincham on August 25, 1982, defense counsel argued that the state should not be able to present their motion in limine or for clarification, and that what the state wanted to do was to be in the position of taking a pre-trial appeal from their own motion, which the state procedural rules arguably did not permit (*See* Gervasi Ex. 9, at 4–5).

**7.** The federal prosecutors certainly could have called Dernbach as a witness in the hearing held before this Court. This testimony would not have been out-of-bounds based on the Court's January 26 Order. It would not have required probing the subjective motives of Dernbach, but would have addressed objective evidence: whether the conversation took place, and the content of the conversation. The government has taken the position, however, that Macellaio's testimony is irrelevant.

**8.** The parallel clause in the Fourteenth Amendment that no "State [shall] deprive any person of life, liberty, or property, without due process of law" is a constitutional limitation on the powers of state authorities. The Fourteenth Amendment is irrelevant to the defendants' claims here, since they ask the Court for relief against the federal government (dismissing the indictment).

stances (*see, e.g.,* actions brought pursuant to 28 U.S.C. § 2254; and *cf.* n. 15, *infra* ), a federal district court is without power to review the prosecutorial activities of state authorities.

Furthermore, the remedy for a proven case of vindictive prosecution is a dismissal of the indictment. The judiciary has power to dismiss an indictment on grounds of prosecutorial misconduct or abuse, but this power is narrowly circumscribed. *E.g., compare United States v. Gold,* 470 F.Supp. 1336 (N.D.Ill.1979), *with United States v. Udziela,* 671 F.2d 995 (7th Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982) (cases of prosecutorial misconduct before grand jury; motions to dismiss indictment brought under Fifth Amendment due process clause and supervisory powers of federal court; judiciary has limited power to review the executive's prosecutorial conduct).

In the case at bar, the defendants ask this Court to dismiss an indictment, voted by a federal grand jury at the behest of the prosecutorial arm of the executive branch, not for the acts of the federal prosecutors but for the acts and motives attributable to the state prosecutors. This would be punishing the federal prosecutor who has acted fairly and above-board. There is no precedent for such a request, the dictum in *Burt* notwithstanding.

This Court believes that as a theoretical matter the dictum in *Burt* is not wrong. A case of vindictive prosecution could be made out on proof that the *federal* prosecutors initiated a federal prosecution with the vindictive motive of punishing certain defendants for having exercised their rights under

state law to challenge the admissibility of evidence. But the case has not been made out here. Absent a presumption in the defendants' favor and proof of actual vindictiveness, "no due process violation has been established." *Goodwin, supra,* 102 S.Ct. at 2495.

Finally, the defendants argue that it is just fundamentally unfair and therefore a violation of due process for the state to prosecute the defendants for four and one-half years to the point of exhaustion, and then turn over the products of their efforts to the federal prosecutors for another go-around. They say that the government "with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The defendants recognize that this underlying policy behind the double jeopardy clause of the Fifth Amendment is not directly applicable here, but they urge the Court to apply the same principles in this different context.

The Court understands the position of the defendants. However, the power of separate sovereigns to prosecute the same individual for the same acts clearly exists. The legislatures of the two sovereigns have provided for the possibility for both prosecutions to have been pursued. This Court on these facts lacks the constitutional power to grant the relief defendants seek. Defendants' motion to dismiss on grounds of vindictive prosecution is denied.[9]

---

**9.** The defendants have made a great deal of the fact that had they been prosecuted in state court as opposed to federal court, they would have had the benefit of numerous procedural safeguards not afforded to them in the instant case. The defendants are correct, of course, that a state may afford its citizens certain protections of their civil liberties which exceed those required by the United States Constitution. *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975) ("... a State is free *as a matter of its own law* to

impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards.") (emphasis in original).

However, the fact that a state may afford an individual greater protections than those granted under federal constitutional or statutory law does not give that individual the right to insist on being prosecuted by the sovereign which gives greater safeguards to the accused. *See, e.g., United States v. Schrenzel,* 462 F.2d 765, 772 (8th Cir.), *cert. denied,* 409 U.S. 984, 93

## II. Selective Prosecution

The defendants also have moved to dismiss the indictment on grounds of selective prosecution. They cite two cases, *People v. Powell*, 48 Ill.App.3d 723, 6 Ill.Dec. 409, 362 N.E.2d 1329 (1st Dist.1977), *rev'd.*, 72 Ill.2d 50, 18 Ill.Dec. 318, 377 N.E.2d 803 (1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 455 (1979); *People v. Porcelli*, 25 Ill.App.3d 145, 323 N.E.2d 1 (1st Dist.1974), where attorneys were charged by the state with bribery and the federal authorities never brought charges. The selective prosecution claim must fail.

█ A motion to dismiss based on selective prosecution must show both "that the defendant had been singled out for prosecution while others similarly situated had not been prosecuted and that the Government's discriminatory selection was based upon an impermissible ground." *United States v. Heilman*, 614 F.2d 1133, 1138 (7th Cir.), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3014, 65 L.Ed.2d 1114 (1980). The conscious exercise of some selectivity in enforcement is not unconstitutional "so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' *Oyler v. Boles*, 368 U.S. 448, 456 [82 S.Ct. 501, 505, 7 L.Ed.2d 446] [1962]." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). "Fundamental to the defense is proof that the decision to prosecute was based on impermissible considerations such as race, religion, or the desire to penalize the exercise of constitutional rights." *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir.1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976).

The defendants' mention of *Powell* and *Porcelli*—cases where attorneys were prosecuted in state court but the federal authorities declined to prosecute—is a peculiar argument for these defendants to make. First, these defendants have argued elsewhere that a federal prosecution following upon the heels of a state prosecution evidences prosecutorial vindictiveness. Second, they also have asserted that a subsequent federal prosecution violates the *Petite* policy and therefore should be barred (*see* Part IV, *infra*).

█ Even ignoring the apparent inconsistencies in the positions taken by these defendants, they make no showing demonstrating a right to discovery or a hearing on the selective prosecution claim. *Cf. United States v. Falk*, 479 F.2d 616 (7th Cir.1973) (*en banc*). They have not argued that these attorneys are being prosecuted for reasons of race or religion, and the suggestion that the prosecution was instigated only because they are lawyers ("other arbitrary classification", *Oyler v. Boles, supra*) is unsupported.

█ The defendants seem to contend that they are being prosecuted because they successfully moved to suppress evidence in the state court prosecution, and that the instant prosecution shows a desire to penalize the exercise of constitutional rights. *Cf. United States v. Peskin, supra*. The defendants have confused selective and vindictive prosecution. The latter defense addresses prosecutorial actions taken in response to the exercise of rights by the defendant after a defendant has been charged with an offense. Selective prosecution, on the other hand, deals with the decision to prosecute a person based on an immutable personal characteristic or in response to something he or she had done in the society at large prior to the institution of charges. *See, e.g., United States v. Heilman, supra* (selective prosecution urged when a lobbyist against the adoption of the new copyright law was charged with criminal copyright infringement); *United States v. Johnson*, 577 F.2d 1304 (5th Cir.1978) (prominent tax protestor urges selective prosecution defense to criminal tax charges); *United States v. Falk, supra* (Vietnam war protestor prosecuted for failing to possess a draft registration card).

S.Ct. 325, 34 L.Ed.2d 248 (1972); *Caton v. United States*, 407 F.2d 367, 376 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). Both sovereigns, of course, may prosecute for violations of their own criminal statutes.

Quite clearly this is not a case of selective prosecution, and the motion to dismiss the indictment on these grounds is denied.

### III. *Supervisory Powers*

The defendants ask this Court to invoke its supervisory powers under *McNabb v. United States,* 318 U.S. 332, 347, 63 S.Ct. 608, 616, 87 L.Ed. 819 (1943) and to dismiss the indictment. They make two basic arguments. First, they ask the Court to show by dismissing the indictment that it will not countenance the efforts of the state prosecutors to deny the defendants their arguably more liberal procedural rights under state law. They urge that the state prosecutors be denied a federal forum. This is the "punish the state" argument.

The second argument is that the federal prosecutors should not be permitted to proceed in this case because they have acted as the willing handmaidens of the state's attorney. A federal court, defendants say, should not permit itself to become a dumping ground for a piqued state prosecutor. This is the "cooperation" or "amalgamation of efforts" argument.

The supervisory powers of the federal court are used to control the conduct of federal officers having business before the Court. In enjoining the conduct of federal officers who violated the Federal Rules of Criminal Procedure, the Supreme Court said:

> [W]e have then a case that raises not a constitutional question but one concerning our supervisory powers over federal law enforcement agencies. *Cf. McNabb v. United States . . .*
> Federal courts sit to enforce federal law; and federal law extends to process issuing from those courts. The obligation of the federal agent is to obey the [federal] Rules.

*Rea v. United States,* 350 U.S. 214, 216–17, 76 S.Ct. 292, 293–294, 100 L.Ed. 233 (1956). It has been held that "*Rea* does not authorize the radical measure of federal interference with state proceedings *where federal agents actually violated no federal Rules,* even though it may have been their intent [to] do so." *DeMaria v. Jones,* 416 F.Supp. 291, 298 (S.D.N.Y.1976) (emphasis added) (district court refused to enjoin federal agents, alleged to have violated federal law, from testifying in state criminal action).

■■■ The supervisory power of the federal court simply cannot be extended to punish the activities of state prosecutors. It is a power to be used sparingly in supervising the activities of "federal law enforcement agencies." *Rea, supra,* 350 U.S. at 217, 76 S.Ct. at 294. "The supervisory power merely permits federal courts to supervise 'the administration of criminal justice' *among the parties before the bar. McNabb v. United States, supra,* [318 U.S.] at 340 [63 S.Ct. at 612]." *United States v. Payner,* 447 U.S. 727, 735 n. 7, 100 S.Ct. 2439, 2446 n. 7, 65 L.Ed.2d 468 (1980) (emphasis added) (supervisory power cannot be used to suppress evidence illegally seized by *federal* officers from non-defendant). The defendants' "punish the state" argument looks only to the activities of the state officials, but these individuals are not "parties before the bar." *Id.* Cf. *United States v. Cortina,* 630 F.2d 1207 (7th Cir.1980) (court affirms exercise of supervisory power to suppress evidence seized pursuant to search warrant obtained based on deliberate lie by FBI agent to magistrate). Absent an action brought under the civil rights laws, *see, e.g.,* 42 U.S.C. § 1983, this Court cannot punish these acts.

■■■ The other argument is both more interesting and problematic. Here the defendants assert that the federal prosecutors' activities are inextricably intertwined with the illegal acts of the state prosecutors, and this should not be permitted. It is important first to appreciate the context in which the question arises. The Court has noted above that as a constitutional matter, there is no violation of the double jeopardy clause of the Fifth Amendment for the federal government to prosecute a person for the same basic acts for which the person has been prosecuted and punished by the state government. *Abbate, supra; Bartkus, supra; United States v. DeMichael, supra; United States v. Robison, supra.* There is no presumption of unfairness or impropriety, therefore, when the federal

prosecutor initiates criminal proceedings against a person who previously has been prosecuted by the state.

██ Second, it must be recognized that the judiciary has a very limited power to review the prosecutorial decisions of the executive branch.

> Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.

*Newman v. United States,* 382 F.2d 479, 480 (D.C.Cir.1967) (Burger, J.) (court refuses to review fact that assistant United States attorney consented to plea by one defendant to lesser charges, but refused to consent to same plea by co-defendant).

> It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.

*United States v. Cox,* 342 F.2d 167, 171 (5th Cir.) (*en banc*) *cert. denied sub nom Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) (United States attorney who refused to prepare and sign indictment voted by grand jury held by district court in civil contempt; court of appeals reverses order of civil contempt).

*Newman* and *Cox* obviously deal with different fact patterns from those at bar, but the principle set forth in those cases remains true. There exists a delicate relationship between the judiciary and the executive regarding judicial review of prosecutorial decisions and activities. Certain inroads on the independence of the prosecutor's activities have been made. (*See, e.g.,* discussions *supra* of dismissal of indict-

ments based on vindictive or selective prosecution, and for prosecutorial abuse before the grand jury.) But these are rare instances of the judiciary's interference with what remains the prosecutor's realm.

This discussion establishes the context in which the defendants' motion to dismiss the indictment on the basis of the Court's supervisory power must be reviewed. Testimony has been received that the federal prosecutors were not made aware of the details of this case until after Judge Pincham's ruling some five days before trial was to begin. Further, the defendants have conceded that the federal prosecutors themselves have done nothing wrong.

Instead, they argue that the federal prosecutors may not act as the handmaidens of the state's attorney; that is, they may not be the recipients of the benefits of the misdeeds of the state prosecutors. The defendants must concede that the mere cooperation of the state and federal prosecutors is not improper. *See Rinadi v. United States,* 434 U.S. 22, 27 n. 13, 98 S.Ct. 81, 84 n. 13, 54 L.Ed.2d 207 (1977) (*per curiam*) (noting benefits derived from cooperation between federal and state prosecutors); *Bartkus v. United States,* 359 U.S. 121, 123, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959) (cooperation between state and federal prosecutors not improper). *United States v. Burt, supra,* the case upon which defendants so heavily rely, itself was a case where the state and federal authorities discussed the facts of the potential prosecution for months prior to reaching an agreement that the state would forego prosecution in favor of the federal government.

Therefore, since cooperation and the amalgamation of efforts are not inherently improper, and since the federal prosecutors are not accused of having done anything wrong,[10] the defendants are left to argue

10. The government has stated "that it sought a substitution of forum, for the simple reason that the evidence obtained by the State's investigative technique is admissible in a federal proceeding but not in a state court proceeding . . . [The limitations imposed by the rulings of the Illinois courts] are not imposed by federal

law and thus the federal forum is a more desirable forum for the prosecution of the corrupt scheme devised by Gervasi, Ettinger, and Soteras" (Government's Response, at 30). The Court appreciates the government's candor. This does not show that the government acted with actual vindictiveness or impropriety in

that this Court should dismiss the indictment because the federal prosecutors are in receipt of evidence obtained in violation of state law by state officials.[11] Dismissal of the federal indictment for the misdeeds of the state prosecutors would be punishing the executive for something he did not do. This is beyond the supervisory powers of the federal court. The motion to dismiss the indictment brought under the supervisory powers of this Court must be denied.

### IV. *The Petite Policy*

The defendants claim that the so-called *Petite* policy was violated by the federal government in this case and therefore the indictment should be dismissed. The *Petite* policy grew out of the Justice Department's recognition of the power of the government, unlimited by the constraints of the double jeopardy clause of the Fifth Amendment, *see Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); and *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), to prosecute a person who already had been convicted on the same basic facts in a state court prosecution. The policy prohibits successive prosecutions without prior authorization of "the appropriate Assistant Attorney General whenever there has been a prior state proceeding . . . resulting in (1) an acquittal, (2) a conviction, or (3) a dismissal or other termination of the case on the merits." The policy does not apply "where the state proceeding did not progress to the stage at which jeopardy attached or was terminated in a manner that would not, under the Double Jeopardy Clause, preclude a further state prosecution for the same offense" (Government's Response, Ex. 3).

The *Petite* policy was not violated in the instant case. The state prosecutions were terminated prior to jeopardy attaching since no jury ever was impaneled, no witnesses were sworn, and no testimony was heard. The state would have been free to reindict the defendants even after it

moved to *nolle prosse* (assuming the statute of limitations had not run).

Furthermore, these defendants would not be able to assert the *Petite* policy as a bar to this federal prosecution even if the policy had been violated. Neither *Thompson v. United States,* 444 U.S. 248, 100 S.Ct. 512, 62 L.Ed.2d 457 (1980) (*per curiam*); nor *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (*per curiam*), hold that the *Petite* policy allows the defendant to interpose it as a bar, though "the federal courts should be receptive . . . *when the Government seeks leave to implement that policy." Id.* at 29, 98 S.Ct. at 85 (emphasis added). It has been clearly held that a prosecution undertaken even in arguable violation of the policy is not void. *United States v. Hutul,* 416 F.2d 607, 626–27 (7th Cir.1969), *cert. denied,* 396 U.S. 1007, 90 S.Ct. 562, 24 L.Ed.2d 499 (1970). *See also United States v. Snell,* 592 F.2d 1083, 1087–88 (9th Cir.), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *United States v. Nelligan,* 573 F.2d 251, 255 (5th Cir.1978).

The defendants' motion to dismiss for an alleged violation of the *Petite* policy is denied. The policy was not violated. Even if it had been violated, it would not bar this prosecution.

### V. *Technical Attacks on the Indictment*

Defendant Ettinger has filed a motion to dismiss the indictment claiming that it is insufficient on its face. He urges three arguments in support of the motion.

1. The long distance telephone calls referred to in the indictment were not made by Ettinger and therefore have no connection to him.

2. The long distance calls do not relate to any fraud charged, and therefore the indictment does not allege a crime committed by Ettinger.

3. The indictment is defective because it is vague and non-specific, and contains

---

bringing the instant prosecution. It merely shows that the government is seeking convictions with what it believes is admissible evidence. That is its job.

11. This actually is a question of the admissibility of the evidence obtained by the state and turned over to the federal government. *See* Part VI, *infra.*

general and confusing allegations. It sets forth mere surplusage rather than alleging conduct on the part of Ettinger which would establish the "scheme to defraud" which is central to each count of the indictment.

 Each argument must fail. Ettinger need not personally have made any of the telephone calls to be properly charged, since his criminal liability may be based on the acts of others with whom he was connected. *See United States v. Read,* 658 F.2d 1225, 1230 (7th Cir.1981) (applying 18 U.S.C. § 371); *United States v. Corey,* 566 F.2d 429, 430 n. 2 (2d Cir.1977) (applying 18 U.S.C. § 1343); *United States v. Craig,* 573 F.2d 455, 489 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978) (applying 18 U.S.C. § 1952).

 Next, Ettinger has stated that the telephone calls do not relate to any fraud, and therefore the indictment fails to set forth any crime. He cites *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) for support. *Maze* held that in an action brought under 18 U.S.C. § 1341, the proof at trial must show that the alleged mailings were "sufficiently closely related to [the defendant's] scheme to bring his conduct within the statute." *Id.* at 399, 94 S.Ct. at 648. The indictment here clearly states that the long distance calls allegedly were made "for the purpose of executing the ... [bribery] scheme." The indictment sufficiently charges the crimes. It is for trial to determine if the proof will support the charges.

 Finally, Ettinger cites *United States v. Curtis,* 506 F.2d 985 (10th Cir. 1974), for the proposition that the indictment is packed with surplusage meant to hide the fact that the allegations are vague and confusing. *Curtis,* decided under the Sixth Amendment and Fed.R.Crim.P. 7(c)(1), held the indictment in that case to be insufficient because there was no "substantial indication of the nature or character of [the] scheme or artifice to defraud." *Id.* at 990. The indictment here clearly states that the scheme devised by the defendants had as its intended purpose the bribery of a police officer. The indictment is neither vague nor confusing. Ettinger's motion to dismiss the indictment is denied.

## VI. *Motion to Suppress Evidence*

 Defendants have brought a motion to suppress evidence.[12] At the outset they concede three points: (1) In affirming in part the order suppressing evidence in the state prosecution, the Illinois Supreme Court held that neither the Federal nor State Constitutions had been offended. The suppression order was upheld based on a finding that state statutes had been violated. *People v. Gervasi, supra,* 61 Ill.Dec. at 518, 434 N.E.2d at 1115. (2) The Fourth Amendment was not violated by the surreptitious overhearing and recording of the conversations with Officer Furay. Where there is one party consent, the constitutional guarantees have not been abridged. *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). (3) If the

---

**12.** The motion, filed by defendant Ettinger and adopted by his co-defendants, is styled "Motion to Dismiss Indictment, or, in the Alternative, Motion to Suppress Certain Testimony and Physical Evidence." The defendants have offered no basis for the dismissal of the indictment based on their challenge to the admissibility of the evidence. The motion therefore is treated solely as a motion to suppress.

Further, the defendants have asked the Court to suppress the testimony of Furay and the court reporters who overheard all of the conversations (whether they were telephone or in-person conversations), and also to suppress the notes and transcripts made of these conversations. In its decision, the Illinois Supreme Court did not paint with a broad brush, but

carefully distinguished the admissible from the inadmissible evidence. It found, for example, that all of Furay's testimony was admissible. The testimony and transcripts of the court reporters who overheard telephone conversations were not admissible, but the testimony and the transcripts of the court reporters who overheard in-person conversations were found to be admissible. *People v. Gervasi, supra,* 61 Ill. Dec. at 520, 434 N.E.2d at 1117. Since a portion of the evidence was not suppressed even by the Illinois courts, there is no basis whatsoever for a challenge here as to the admissibility of this evidence. The defendants' motion can be directed only at the evidence excluded by the Illinois courts.

evidence in question had been obtained by federal instead of state officials, the violation of state law would not preclude the introduction of the evidence in this case. *United States v. Infelice,* 506 F.2d 1358, 1365 (7th Cir.1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1975); *United States v. Escobedo,* 430 F.2d 603, 607 (7th Cir.1970), *cert. denied,* 402 U.S. 951, 91 S.Ct. 1632, 29 L.Ed.2d 122 (1971); *United States v. Teller,* 412 F.2d 374, 377 (7th Cir. 1969), *cert. denied,* 402 U.S. 949, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971).

The legal theory the defendants rely upon to support the motion to suppress is not entirely clear to the Court. They have admitted that the Fourth Amendment has not been violated. It is also true that the federal wiretap statute explicitly permits the introduction of this kind of evidence. 18 U.S.C. § 2511(2)(c). The defendants instead argue a kind of "silver platter" doctrine: it would be entirely improper, they say, for state officials to violate state law and then hand over the evidence to federal authorities for admission in federal court. Based on this theme and the cases cited by the defendants, the Court believes that the defendants ask the Court to employ its supervisory powers to exclude this evidence. This would be in keeping with the oldest usage of the federal courts' supervisory powers. *See McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) (statements excluded where defendants were not brought before a judicial officer for two days after arrest).

The government and the defendants agree as to the question at issue: is evidence obtained by state officials in violation of state law admissible in a federal proceeding if the evidence was not obtained in violation of federal law?

Two cases from other circuits have decided this question on very similar facts. *United States v. Nelligan,* 573 F.2d 251 (5th Cir.1978); *United States v. Shaffer,* 520 F.2d 1369 (3d Cir.1975) (*per curiam*), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1976). In *Nelligan,* a Florida detective recorded his telephone conversation with the defendant in violation of Florida law. The recording was found admissible in federal court: "The applicability of federal law is not affected by the fact that a state agent rather than a federal agent is the party who is alleged to have violated the state statute." 573 F.2d at 253.[13]

In *Shaffer,* the defendant moved to suppress recordings of telephone conversations made in violation of Delaware law, though there had been no violation of federal law. The defendant argued that the federal courts, by admitting such "tainted evidence," should not be seen to approve violations of Delaware law by Delaware officers. The Third Circuit unequivocally rejected the argument and held that the evidence was admissible.

The defendants have attempted to distinguish *Nelligan* and *Shaffer.* First, they say that in both cases the federal authorities participated in the investigations, whereas in the case at bar the state authorities investigated and prosecuted the case for four and one-half years prior to the entrance of the federal authorities.[14] Second, they argue that in neither of the cases did the prosecuting agencies submit themselves to state authorities where they received adverse rulings, again in contradistinction to the facts here.

*Shaffer* is a case where the FBI did become involved prior to the time the tele-

---

**13.** The Court notes that in *Nelligan* the defendant initially was prosecuted in state court but the charges were dismissed because the defendant was not afforded a speedy trial. A federal indictment then was returned. The defendant challenged the indictment on grounds of an alleged violation of the *Petite* policy, and challenged the evidence for reasons discussed above. Both defenses failed. The defendant did not move to dismiss the indictment on grounds of vindictive prosecution.

**14.** The point the defendants want to make here is not entirely clear. The Court reads this argument as relating to the proposition conceded by the defendants and supported by the *Infelice, Escobedo,* and *Teller* cases, *supra:* the involvement of federal officers in obtaining evidence in violation of state law would not make the evidence inadmissible in federal court (assuming federal law was not violated).

phone was tapped. This fact was mentioned in passing by the court but was not the basis of its decision. Instead, the Third Circuit spoke at length of the absurdity of keeping such evidence out where it clearly would be admissible had the federal officers performed the entire investigation. The *Shaffer* court suggested that the defendant's remedy for such a violation of Delaware law was to bring a civil suit against the offenders.

*Nelligan* fails to support either attempt by these defendants to distinguish it. First, federal authorities had no involvement whatsoever with the recording of the incriminating telephone conversation. Second, the federal authorities did not become involved in the investigation or prosecution until after the state submitted itself to state authorities and received an adverse ruling: the dismissal of the state charges. While *Shaffer* is distinguishable for an irrelevant reason, *Nelligan* cannot be distinguished at all. *See also United States v. Fossler,* 597 F.2d 478 (5th Cir.1979) (motion to suppress granted by state court; motion to suppress denied in subsequent federal prosecution for same acts).

The defendants have brought to the Court's attention two series of cases which they contend support their position. The first group is composed of three cases from the Supreme Court where evidence was excluded from a federal prosecution. Each case is clearly distinguishable on meaningful grounds. *Rea v. United States,* 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956) (federal officers who seized evidence in violation of federal law enjoined from testifying in state court); *Benanti v. United States,* 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957) (evidence obtained by state officials in violation of federal law inadmissible in federal court); *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (evidence seized by state officers in violation of federal constitution inadmissible in federal court). In all these cases the evidence was seized in violation of federal law. The evidence obtained in this case admittedly was obtained in accordance with federal law. Thus these cases are inapplicable.

The second group of cases cited by the defendants all come out of the Second Circuit. *United States v. Vazquez,* 605 F.2d 1269 (2d Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979); *United States v. Sotomayor,* 592 F.2d 1219 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979); *United States v. Marion,* 535 F.2d 697 (2d Cir.1976); *United States v. Rizzo,* 491 F.2d 215 (2d Cir.), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974); *United States v. Manfredi,* 488 F.2d 588 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); *United States v. Lilla,* 534 F.Supp. 1247 (N.D.N.Y.1982). In particular, the defendants offer these quotations (both of which are in fact *dictum*):

> If a state should set forth procedures *more* exacting than those of the federal [wiretapping] statute, however, the validity of the interceptions and the orders of authorization by which they were made would have to comply with that test as well.

*United States v. Marion, supra,* 535 F.2d at 702 (emphasis in original).

> Since a state's protection of privacy normally reflects principles central to its social and governmental order, our failure to respect its more stringent protection of privacy rights would not only violate principles of federalism, but encourage state and federal law enforcement officials to by-pass state law and to engage in federal forum-shopping of tainted evidence.

*United States v. Sotomayor, supra,* 592 F.2d at 1225.

This language would seem to support defendants' argument that if the state affords greater protections to a person than does the federal government, a federal court must respect these state-created rights and rule inadmissible evidence obtained in violation of state but not federal law.

Such an interpretation would raise constitutional questions under Article VI of the United States Constitution, the Supremacy

Clause, if a state legislature thus would be able to bar the federal government from effectively prosecuting people for violations of federal law. *Cf. United States v. Hall,* 543 F.2d 1229, 1232 (9th Cir.1976) (*en banc*), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). However, the Court need not reach this constitutional question because on close examination the Second Circuit cases are inapplicable.

All of the Second Circuit cases adjudged challenges by defendants to the admissibility of wiretap evidence obtained pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.* ("Title III"). These challenges rested on the allegations that Title III authorization was sought from state judges but the requirements of state wiretap law were not met. The defendants moved to suppress the introduction of such evidence in federal prosecutions.

A state prosecutor may apply to a state court for authorization to intercept nonconsensual conversations, "and such judge may grant in conformity with section 2518 of this chapter *and with the applicable State statute* an order authorizing" such interception. 18 U.S.C. § 2516(2) (emphasis added). The effect of this section is to adopt as a part of federal law the more stringent standards (if any) of the state wiretap law where an application has been made to a state court. If evidence was obtained in violation of "state law" (made federal law by Title III's incorporation provision), the evidence is inadmissible in federal court. *See, e.g., United States v. Manfredi, supra,* 488 F.2d at 598 n. 7.

This is a statutory protection afforded by Congress to those who come within the terms of the statute. Title III is addressed to the interception of wire or oral communications where there has not been one-party consent. It is uncontested that Officer Furay consented to the interception in this case. As mentioned above, Congress specifically provided that intercepted conversations are not inadmissible where there did exist one-party consent. 18 U.S.C. § 2511(2)(c).

For those who do not come within the terms of Title III—such as the defendants in this case—the added protections afforded by the Congressional adoption of the more stringent state standards do not exist. Though the language of some of the Second Circuit cases would seem to support defendants' position that the more stringent state standards govern admissibility in every case (whether the case implicates evidence obtained pursuant to Title III or not), the cases have no application to situations outside the scope of the federal statute.

The Fifth Circuit in *Nelligan, supra,* explicitly distinguished two of the cases cited by the defendants here, *Rizzo* and *Manfredi,* on these precise grounds:

> [T]he Second Circuit's conclusion that state law governs the validity of warrants issued by state courts is in no way inconsistent with the general rule that federal law governs the admissibility of wiretap evidence in federal criminal cases, because the federal statute includes the relevant state law in the context of state court authorizations.

*Nelligan, supra,* 573 F.2d at 254. Since the Florida detective consented to the recording and acted under color of state law, *see* 18 U.S.C. § 2511(2)(c), "the interception was valid under federal law, and properly admitted at defendant's trial." *Id.*

This is precisely the issue here. The cases cited by the defendants are inapplicable. No federal statute, constitutional provision, or policy bars the introduction of the evidence in this case.

The defendants have cited to the Court the words of Mr. Justice Brandeis, writing eloquently in dissent:

> In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. . . . If the Government becomes a law breaker, it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure conviction of a private

criminal—would bring terrible retribution.

*Olmstead v. United States,* 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928). The Court believes these words have great power and meaning and that they express values of fundamental importance in our system of laws. But Justice Brandeis' message does not bear on the issue presented here, where the federal government has not been a law breaker but has observed the law scrupulously. For the reasons given above, the motion to suppress evidence must be denied.[15]

THEREFORE IT IS ORDERED that

(1) Defendants' motions to dismiss the indictment are denied.

(2) Defendants' motion to suppress evidence is denied.

---

**15.** The defendants have cited as additional authority an unpublished opinion by then Judge (now Chief Judge) McGarr of this Court in *United States v. Talles,* No. 74 CR 490 (November 7, 1974). In *Talles,* the defendant had been prosecuted in state court on a narcotics charge. He moved to quash the search warrant and to suppress the evidence based on violations of federal constitutional law, and the motion was granted by the circuit court judge. The evidence then was brought to the federal prosecutors by officers of the state and a federal grand jury voted an indictment. Judge McGarr granted the defendant's motion to suppress the evidence, basing his decision on the fact that with the exception of cases brought under 28 U.S.C. § 2254, a federal district court had no "appellate" power to review the decision of a state trial court, the role which in effect he had been asked to adopt.

*Talles* is of course a different case. The Court here is not being asked to review the decisions of the Illinois courts on the question of whether the evidence violated the Illinois wiretap law, the only question finally adjudicated by the Illinois courts. *See People v. Gervasi,* supra. Instead, this Court has been asked to rule on the admissibility of the evidence under federal law.

In addition, there is substantial authority to support the proposition that a federal court is not bound by collateral estoppel or comity to accept the decisions of a state court which has previously ruled as to the admissibility of particular evidence under the federal Constitution. *See, e.g., Elkins v. United States,* 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *United States v. Fossler,* 597 F.2d 478, 481–82 (5th Cir.1979); *United States v. Mejias,* 552 F.2d 435, 444 (2d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977); *United States v. Panebianco,* 543 F.2d 447, 456 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977).