**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luke A. NELLIGAN,
Defendant-Appellant.**

No. 77–5403.

United States Court of Appeals,
Fifth Circuit.

May 19, 1978.

---

Denis Dean, Miami, Fla. (Court-appointed), for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., James E. McDonald, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before COWEN *, Senior Judge, GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Luke A. Nelligan appeals from his conviction by a jury of defrauding the telephone company in violation of 18 U.S.C. § 1343.[1] Defendant contends that his conviction should be reversed because a tape of a telephone conversation involving defendant was improperly admitted into evidence and because the federal prosecution was brought subsequent to a state charge regarding the same conduct, in violation of the Justice Department's *Petite*[2] policy, which is concerned with duplicative prosecutions. We affirm the conviction.

The Government's principal witness was Thomas McGrath, a detective with the City of Hialeah, Florida, Police Department. McGrath was operating undercover when

---

* Senior Judge of the United States Court of Claims, sitting by designation.

1.  18 U.S.C. § 1343 provides:

    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for *obtaining money or property by means of* false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or tele-

vision communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2.  *Petite v. United States,* 361 U.S. 529, 531, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960).

he first met defendant Nelligan. Defendant invited the detective to his apartment in Hialeah, where McGrath noticed a device attached to the telephone. Nelligan explained that the device was useful in avoiding long-distance charges. McGrath observed this "black box" device in defendant's apartment on a number of occasions. In the fall of 1974 McGrath told Nelligan that he planned to travel to New York, and defendant asked the detective to telephone him from New York, with assurances that the call would be toll free. When Detective McGrath was in New York he telephoned defendant and recorded the conversation. The taped conversation included references by Nelligan to a special signal to be used in avoiding the long-distance charge. McGrath later obtained a search warrant for defendant's apartment from a Florida state court, and during the search the "black box" device was seized. Nelligan was charged with possessing a device for the purpose of avoiding payment for telephone services, and fraudulently avoiding such payment in violation of Fla.Stat. §§ 817.481(2) and 817.482(1)(a) (1973).[3] However, these state charges were later dismissed because defendant was not afforded a speedy trial. After dismissal of the state charges, a federal indictment was returned, charging that Nelligan defrauded the telephone company in violation of 18 U.S.C. § 1343, and he was convicted of the offense.

The first issue raised by defendant Nelligan concerns the tape recording of the telephone conversation between him and Detective McGrath while McGrath was in New York. Defendant contends that Florida law governs the admissibility of this evidence, and that Fla.Stat. § 934.06 (1973)

forbids the use in evidence of unlawfully taped conversations. Florida law prohibits the electronic recording of telephone conversations, see Fla.Stat. § 934.03 (1974), unless one of the parties to the conversation is a law enforcement officer seeking to obtain evidence of a crime, or all of the parties have consented to the interception. See Fla.Stat. § 934.03(2)(c), (d).

We need not decide whether Detective McGrath lost his status as a law enforcement officer for the purposes of Fla. Stat. § 934.03(2)(c) when he recorded the conversation in New York, as it is well settled that federal law governs the admissibility of tape recordings in federal criminal cases. See On Lee v. United States, 343 U.S. 747, 754–55, 72 S.Ct. 967, 972, 96 L.Ed. 1270 (1952); Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); United States v. Hall, 10 Cir., 536 F.2d 313, 327, cert. denied, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976); United States v. Armocida, 3 Cir., 1975, 515 F.2d 49, 52 (applying federal rather than state law to determine the admissibility of intercepted conversations). The applicability of federal law is not affected by the fact that a state agent rather than a federal agent is the party who is alleged to have violated the state statute. Cf. United States v. Hall, supra (where the FBI supplied tape-recording equipment to a state official who then recorded his conversations with the defendants).

Defendant relies on United States v. Rizzo, 2 Cir., 491 F.2d 215, cert. denied, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974), and United States v. Manfredi, 2 Cir., 1973, 488 F.2d 588, cert. denied, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974), for his contention that state law

**3.** Fla.Stat. 817.481 provides in relevant part:
(2) It shall be unlawful for any person to avoid or attempt to avoid or to cause another to avoid payment of the lawful charges, in whole or in part, for any telephone or telegraph service or for the transmission of a message, signal or other communication by telephone or telegraph or over telephone or telegraph facilities by the use of any fraudulent scheme, means or method, or any mechanical, electric, or electronic device.

Fla.Stat. 817.482 provides:
(1) It shall be unlawful for any person knowingly to:
(a) Make or possess any instrument, apparatus, equipment or device designed or adapted for use for the purpose of avoiding or attempting to avoid payment of telecommunications service in violation of s. 817.481.

should apply here. However, those cases are inapposite, as they applied state law in determining the validity of state warrants for the interception of conversations. The federal wiretap statute, 18 U.S.C. § 2516(2), provides for state court authorizations of interceptions in conformity with the applicable state statute.[4] Thus, the Second Circuit's conclusion that state law governs the validity of warrants issued by state courts is in no way inconsistent with the general rule that federal law governs the admissibility of wiretap evidence in federal criminal cases, because the federal statute includes the relevant state law in the context of state court authorizations.

> The federal wiretap statute provides that It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c).

■ We find that Detective McGrath both consented to the recording and acted under color of law when, in furtherance of his investigation of Nelligan, he recorded his conversation with the defendant. *See United States v. Hall,* 10 Cir., 536 F.2d 313, 327, *cert. denied,* 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976) (finding both prior consent and action under color of law). Therefore, the interception was valid under federal law, and properly admitted at defendant's trial.

■ The other issue in this case is the proper role of the Department of Justice's *Petite* policy. The central purpose of the policy is to avoid "any unfairness associated with needless multiple prosecutions." *Rinaldi v. United States,* 434 U.S. 22, 31, 98 S.Ct. 81, 86, 54 L.Ed.2d 207 (1977). The policy is not constitutionally mandated,

but is instead a method of regulating prosecutorial discretion by the Department. *See id.* at 84. Defendant argues that the *Petite* policy was violated because the federal prosecution and conviction followed the abortive state prosecution for the same unlawful conduct. Application of the *Petite* policy was urged by defendant before sentencing, and in response the Government sought the opinion of the Department of Justice. The trial court received a letter from Robert L. Keuch, a Deputy Attorney General, for Benjamin R. Civiletti, Assistant Attorney General of the Criminal Division. The letter stated that the prosecution of defendant Nelligan did not involve the *Petite* policy, and that the Department of Justice did not intend explicitly to authorize prosecution in cases which "in no way implicate [the Department's] dual prosecution policy." In *Rinaldi* the Supreme Court noted that in prosecutions involving the *Petite* policy, prior authorization from an appropriate Assistant Attorney General was required. *See id.* at 82 n.5, 83 n.8. The prior authorization requirement is designed to ensure that "compelling reasons" exist for prosecuting notwithstanding the *Petite* policy. *See id.,* at 83 n.8. The Deputy Assistant Attorney General was therefore correct in insisting that prior authorization is not mandated in every federal prosecution subsequent to a state prosecution for the same conduct, but only in those federal prosecutions in which the underlying concern of the *Petite* policy ("unfairness associated with successive prosecutions," *id.* at 84) is present.

The *Petite* policy has been applied in cases where the state prosecution resulted in a conviction, *e. g., Rinaldi v. United States, supra,* and in an acquittal, *see Watts v. United States,* 422 U.S. 1032, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975). However, the fairness concern of the *Petite* policy is hardly compelling in a context where there has

---

4. The relevant portion of the statute is:

> (2) The principal prosecuting attorney of any State, . . . may apply to [a State court judge of competent jurisdiction] for, and *such judge may grant in conformity* with section 2518 of this chapter and *with the*

*applicable State statute* an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers . . . . (emphasis added)

18 U.S.C. § 2516.

been no determination of guilt or innocence in the state prosecution, and no burden of trial on the defendant. As the Supreme Court stated in *Rinaldi*: "[t]he *Petite* policy was designed to limit the exercise of the power to bring successive prosecutions for the same offense to situations comporting with the rationale for the existence of that power." 434 U.S. 22, 28, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977). The rationale for the existence of the power to bring successive prosecutions was explained in *Abbate v. United States*, 359 U.S. 187, 195, 79 S.Ct. 666, 671, 3 L.Ed.2d 729 (1959): "if the States are free to prosecute criminal acts violating their laws, and the resultant state prosecutions bar federal prosecutions based on the same acts, federal law enforcement must necessarily be hindered." This is such a case. The failure of the state to try defendant and decide his guilt or innocence does not preclude the federal government from determining whether a defendant has violated a federal statute proscribing the same conduct. There is no lack of necessity or any unfairness attached to the prosecution of defendant Nelligan and therefore the *Petite* policy does not apply in the circumstances presented here.

■ In any case, it is apparent that the *Petite* policy is intended to be no more than self-regulation on the part of the Department of Justice. The Court in *Rinaldi* emphasized that although fairness is served by avoiding unnecessary prosecutions, the Constitution does not prohibit successive state-federal prosecutions. *See* 434 U.S. 22, 28, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977). The Supreme Court has never compelled the dismissal of a prosecution pursuant to the *Petite* policy over the objections of a recalcitrant Department of Justice.[5] This court has recognized that *Petite* is an internal policy of self-restraint that should not be enforced against the government. *See Fry v. United States*, 5 Cir., 1978, 569 F.2d 303, 304;[6] *United States v. Hayles*, 5 Cir., 492 F.2d 125, 126, *vacated on other grounds*, 419 U.S. 892, 95 S.Ct. 168, 42 L.Ed.2d 136 (1974).[7]

AFFIRMED.

---

**5.** "[T]he federal courts should be receptive, not circumspect, *when the Government seeks leave to implement that policy.*" (emphasis added) *Rinaldi v. United States*, 434 U.S. 22, 29, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977).

**6.** The court in *Fry* stated: "It is unnecessary for us to consider whether the government violated its *Petite* Policy by carrying out this prosecution notwithstanding appellant's arrest by state authorities on related state charges. It is enough to know that the government does not urge its application but rather insists the policy was not violated." [citing *Rinaldi*] *Id.*

**7.** In *Hayles* this court noted that it could not "review the discretion of the Executive in deciding to prosecute for a federal offense although a state conviction had already been secured for the same conduct, . . . ." *Id.*