**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Relious Essix GLASCO, Defendant–Appellant.**

No. 89–5197.

United States Court of Appeals, Fourth Circuit.

Argued July 17, 1990.

Decided Oct. 25, 1990.

R. Thomas Czarnik, Princeton, W. Va., for defendant-appellant.

Dwane L. Tinsley, Asst. U.S. Atty., argued (Michael W. Carey, U.S. Atty., Amy M. Lecocq, Asst. U.S. Atty., on brief), Charleston, W. Va., for plaintiff-appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

WIDENER, Circuit Judge:

Relious Glasco appeals his conviction and sentence for three counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. We affirm.

On February 1, 1989, a federal grand jury in Charleston, West Virginia, charged Relious Essix Glasco with three counts of distributing cocaine base, also known as crack, at or near Beckley, Raleigh County, West Virginia. Glasco engaged in discovery, and on April 27, 1989, filed a motion to suppress certain tape recordings obtained by members of the Beckley Police Department who had recorded Glasco's conversations by placing a body recorder on a consenting informant. The district court on May 31, 1989, denied Glasco's motion to suppress, and on June 7, 1989, a jury found Glasco guilty of all three counts charged in the indictment. The district court then sentenced Glasco to 25 months in prison.[1] On appeal, Glasco challenges the district court's refusal to suppress the tape recordings of his conversations, as well as the district court's refusal to reduce his offense level under the Sentencing Guidelines based upon his role in the offense.

■ With respect to his first assignment of error, Glasco argues that, because the officers failed to comply with various provisions of West Virginia law governing electronic surveillance, *see* W.Va.Code §§ 62–1D–1 *et seq.*, the tape recordings should have been suppressed. While recognizing that federal law ordinarily governs the admissibility of evidence in a federal criminal trial, Glasco contends that federal courts apply state standards, even if those standards are more restrictive, if electronic surveillance is conducted solely by state officers without federal involvement. The government argues that the district court properly applied federal law because the Beckley police officers were acting as agents of an FBI task force in a joint investigation conducted by both state and federal authorities.[2] We believe that whether state or federal authorities conducted the investigation is irrelevant, and that the district court properly denied Glasco's motion to suppress.[3]

It is well-settled that "[i]n a federal criminal prosecution, federal standards govern the admissibility of evidence." *United States v. Mealy*, 851 F.2d 890, 907 (7th Cir.1988); *see also United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir.1987) (citing cases and concluding that "all other circuits that have been presented with this issue have concluded that 'evidence admissible under federal law cannot be excluded because it would be inadmissible under state law'"). Further, the fact that state

---

1. The district court also fined Glasco $2,400, imposed a $150 special assessment, and ordered that Glasco be placed on supervised release for four years following his release from prison.

2. The government apparently concedes that it presented little direct evidence of the joint character of the investigation, and that four consent forms in which the government informant authorized FBI special agents to place a body recorder on his person represent the only evidence (as opposed to statements of the govern-ment's attorney) in the record to support such a finding.

3. Because we conclude that it makes no difference whether the officers were functioning as state officers or federal officers, and because Glasco's only assignment of error with respect to his conviction is predicated upon that distinction, a detailed description of the underlying investigation is unnecessary.

officers obtained evidence with no federal involvement does not alter the general rule. *See United States v. One Parcel of Real Property*, 873 F.2d 7, 8 (1st Cir.), *cert. denied sub nom. Latraverse v. United States*, —— U.S. ——, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989); *Mealy*, 851 F.2d at 907; *Pforzheimer*, 826 F.2d at 204; *United States v. Chavez–Vernaza*, 844 F.2d 1368, 1374 (9th Cir.1987); *United States v. Rickus*, 737 F.2d 360, 363–64 (3d Cir.1984).

Glasco relies upon a line of wiretapping cases which stand for the proposition that "the Government, in allowing a joint investigation to proceed through the use of a state warrant, subjects itself to the risk that state courts may impose on such warrants and the evidence obtained under those warrants a higher standard than would a federal court dealing with interpretation of the federal wiretap statutes." *United States v. Manfredi*, 488 F.2d 588, 598 n. 7 (2d Cir.1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); *see also United States v. McNulty*, 729 F.2d 1243 (10th Cir.1984) (en banc). Far from establishing the general applicability of state law to wiretapping cases, however, *Manfredi* and similar cases apply to exclude evidence in a federal court only if the investigating officers obtained judicial authorization for a wiretap from a state court. Moreover, it is federal law, the text of the federal wiretapping statute itself, 18 U.S.C. § 2516(2), that requires the application of state law under such circumstances. *McNulty*, 729 F.2d at 1264. As other circuits have recognized, state law is simply irrelevant in a federal prosecution if the investigating officers, even state officers, acting alone, are not acting under the authorization of a state court.

For example, in *United States v. Nelligan*, 573 F.2d 251 (5th Cir.1978), a case on facts so close to those here as to be indistinguishable, a detective with the Hialeah, Florida Police Department recorded a telephone call he placed to the defendant. In addressing the defendant's claim that *Manfredi* and its progeny mandated the application of state law to the state agent's investigation, and that the detective's conduct violated Florida's wiretapping statutes, the Fifth Circuit stated that:

[T]hose cases are inapposite, as they applied state law in determining the validity of state warrants for the interception of conversations. The federal wiretap statute ... provides for state court authorizations of interceptions in conformity with the applicable state statute. Thus, the Second Circuit's conclusion that state law governs the validity of warrants issued by state courts is in no way inconsistent with the general rule that federal law governs the admissibility of wiretap evidence in federal criminal cases....

*Nelligan*, 573 F.2d at 254 (footnote omitted). Therefore, the Fifth Circuit concluded that, because the interception was valid under federal law, the recording properly was admitted at Nelligan's trial.

More recently, in *United States v. D'Antoni*, 874 F.2d 1214 (7th Cir.1989), another case on point, an informant of the state officers recorded several telephone conversations between himself and the targets of a state investigation. The defendants in *D'Antoni* argued, as Glasco does here, that federal courts should apply state law to evidence gathered by state officials in violation of state law. To do otherwise, asserted the defendants, would encourage state officials to violate state law. The Seventh Circuit reiterated the general rule that in federal court a search and seizure should be evaluated as if federal officers conducted the search and seizure, however, and concluded that "[A]s long as the tape-recorded conversations are admissible under federal law, which they are here, they are admissible in federal court, even though they might not have been admissible in state court." *D'Antoni*, 874 F.2d at 1218.

In the case before us, as in *Nelligan* and *D'Antoni*, an agent or informant recorded conversations with Glasco, albeit with a body wire rather than over the telephone. Because no state court authorization was sought, *Manfredi* and the other cases upon which Glasco relies are not implicated. In addition, we know of no reported case in which a federal court has adopted Glasco's position and excluded evidence, tape recordings or otherwise, on the basis that state officers, not acting under state court au-

thorization, violated state law in obtaining the material. Although we do not condone the violation of state law by state officers, if indeed such a violation occurred here, as the Seventh Circuit recognized, "[O]ther sanctions already exist to control the conduct of state officers." *D'Antoni,* 874 F.2d at 1219. Because Glasco has alleged no violation of federal law, the district court properly denied Glasco's motion to suppress the tape recordings.[4]

■ Finally, Glasco also appeals his sentence. Under the Sentencing Guidelines, the amount of crack Glasco sold translated to a base offense level of 16. Combining level 16 with a criminal history category of I produced a Guidelines range of 21–27 months, and the district court sentenced Glasco to 25 months. Glasco contends, however, that the district court erred in not reducing his base offense level due to his role in the offense. Our review of this issue is governed by the clearly erroneous standard. *United States v. Gordon,* 895 F.2d 932, 934 (4th Cir.1990).

The Sentencing Guidelines provide for a reduction in a defendant's offense level based on his role in the offense under the following circumstances:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2. (Sentencing Guidelines references are to the Manual effective November 1, 1987.) The commentary to § 3B1.2 indicates that the section applies to the least culpable members of a group of persons engaged in concerted criminal activity, such as a participant without knowledge of the scope of the enterprise or an offloader or courier of a single shipment of drugs in an otherwise large smuggling operation. Glasco claims that each time he sold crack to the informant he had to locate and purchase the drug from someone else,

and that he resold the drug to the informant at no profit to himself, but merely as a favor. Therefore, Glasco contends that he is less culpable than even an offloader or a courier, and that he was entitled to a reduction as a minimal or minor participant.

Glasco plainly confuses a minor participant in a major operation, which is the subject of § 3B1.2, with his own status as a major participant in a minor operation, as to which § 3B1.2 should not apply. Indeed, as the actual seller of drugs, and even if he was merely a go-between as he contends, Glasco did not engage in the kind of conduct contemplated by § 3B1.2. *Gordon,* 895 F.2d at 935. The district court's finding that Glasco was not entitled to the benefits of § 3B1.2 and a lowering of his base offense level was not clearly erroneous.

Accordingly, the judgment of the district court is

AFFIRMED.

---

**4.** As the court noted in *Nelligan,* 18 U.S.C. § 2511(2)(c) explicitly does not exclude from evidence intercepted wire or oral conversations when one of the parties has consented to the intercept and is acting under color of law, as was patent here.