998 F.2d 1011
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leobardo RODRIGUEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Olivero GARCIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramiro SUAREZ, Defendant-Appellant.
 Nos. 92-5495, 92-5496 and 92-5510.
 United States Court of Appeals, Fourth Circuit.
 Argued May 6, 1993.
Decided July 12, 1993.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Salisbury; No. CR-92-26-S, Richard C. Erwin, Senior District Judge.
 Susan Hayes, Greensboro, NC, argued, for defendants-appellants (George R. Clary, III, Clary & Branch, Winston-Salem, NC, on brief), for appellant Rodriguez.
 Robert Michael Hamilton, Asst. U.S. Atty., Greensboro, NC, argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.
 M.D.N.C.
 AFFIRMED.
 Before WILKINSON, Circuit Judge, SPROUSE, Senior Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Leobardo Rodriguez, Olivero Garcia, and Ramiro Suarez appeal their convictions for conspiracy to possess with intent to distribute approximately 3 kilograms of cocaine and 300 pounds of marijuana. Appellants contend that there was no substantive offense charged, and, in the alternative, that any conspiracy shown in the evidence was not consummated. The appellants also assert five challenges to the district court's rulings under the Sentencing Guidelines. We affirm the convictions as well as the application of the Sentencing Guidelines.
 
 I.
 
 2
 This case involved a reverse sting operation where government agents posed as drug dealers in an effort to meet prospective buyers of large quantities of illicit drugs. An informant in Texas worked with these agents and travelled with the appellants to a Comfort Inn in Mocksville, North Carolina, for the purpose of meeting with the agents to purchase drugs. There were a number of meetings between the agents and appellants, some of which were tape-recorded, and the agents gave the appellants samples of both marijuana and cocaine.
 
 
 3
 These negotiations concluded with an agreement that the appellants would buy 300 pounds of marijuana and 3 kilograms of cocaine for $300,000, with $150,000 to be paid "up front" upon the delivery of the illicit drugs. The appellants made several statements to the effect that they were not purchasing for themselves but were serving as "brokers" for other "ultimate purchasers."
 
 
 4
 Apparently convinced of the strength and purity of the drugs involved from the samples which were given them, Rodriguez and Suarez brought a red duffle bag containing approximately $150,000 to the agents' motel room, walked into the bedroom and dumped the money on the bed. Photographs of the appellants and the money strewn across the bed were taken by the wife of the informant. At that point, one of the agents left the motel room, ostensibly to get the drugs. Instead, he returned with a team of agents to arrest Rodriguez and Suarez. The agents then went to a nearby hotel room and arrested Garcia.
 
 II.
 
 5
 The standard of review in determining the propriety of a conviction for conspiracy is that "the evidence and all reasonable inferences arising from it must be viewed in the light most favorable to the government, the prevailing party." United States v. Mabry, 953 F.2d 127, 130 (4th Cir.1991), quoting United States v. Laughman, 618 F.2d 1067, 1075 (4th Cir.1980).
 
 
 6
 In order to support a conviction for conspiracy, the Government must show that a conspiracy existed, that the defendant had knowledge of the conspiracy, and that the defendant voluntarily became a part of the conspiracy. United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992). The record in this case supports the argument of the government that a finding of a conspiracy was clearly appropriate in light of the following facts in evidence: the three appellants travelled together from Texas to North Carolina for the express purpose of purchasing drugs, the appellants requested and received samples of the drugs, Rodriguez and Suarez paid approximately $150,000 as half-payment for the load of drugs and were photographed with the money, and Garcia was arrested a short distance away with $2,000 cash. The only evidence offered contrary to this recitation of facts is appellants' assertion that they were mere "brokers."
 
 
 7
 The argument that the appellants were mere "brokers" is a variant on an argument which appears more and more frequently in these cases, to the effect that the defendant was simply a "facilitator" of the illicit transaction. It is difficult to understand how this argument can be applied in this case. At the very least, the defendants took possession of the samples and produced $150,000 in order to take possession of the remainder of the drugs. Thus, the appellants had actual possession of the samples and showed every intention of possessing the totality of drugs agreed upon in their bargain. The fact that the agents did not possess the drugs or actually deliver them has no bearing on the intent of the appellants. The clearest proof of the intention of the appellants was their delivery of the approximately $150,000 to the agents. The evidence in this case was sufficient for a reasonable jury to reach a verdict of guilty beyond a reasonable doubt, under the standard of "the evidence and all reasonable inferences arising from that evidence" as viewed in the light most favorable to the government. See Mabry, 953 F.2d at 130. Except in very narrow circumstances, a "facilitator" defense is not likely to be successful in the drug-trafficking context.
 
 III.
 
 8
 The Sentencing Guideline questions are questions of fact reviewable under the "clearly erroneous" standard. United States v. Daughtrey, 874 F.2d 213 (4th Cir.1989); United States v. Martinez, 901 F.2d 374, 379 (4th Cir.1990). The various challenges to the application of the Sentencing Guidelines are quickly answered.
 
 
 9
 First, the appellants argue that the government was not able to produce the drugs it agreed to sell to appellants, and that, therefore, the appellants should not be held accountable for those amounts. However, the amount negotiated for in a drug transaction is the amount utilized for sentence calculations. U.S.S.G. § 2D1.1 Application Note 12. This rule is applied also to "reverse sting" transactions. United States v. Adams, 901 F.2d 11, 12 (2d Cir.1990). The district court was correct in its utilization of Application Note 12 in its sentencing calculations.
 
 
 10
 Suarez claims that he should have been granted a two-point reduction in sentencing as a "minor participant" because he was the least culpable of any of the appellants. Rather than making a trip to purchase drugs, Suarez was returning to his home in North Carolina from a visit to family in Texas. He did not participate in any of the negotiations. At most, he was a broker with no economic interest in the transaction. Suarez' only overt act was to carry the sack of money from one room to another.
 
 
 11
 However, the evidence showed that Suarez traveled from Texas to North Carolina in the company of the co-defendants and the informant, that he was involved in the negotiations, and that he delivered the approximately $150,000 to the agents. Even if one accepts Suarez' contention that he was only a "broker," such a "go-between" in a narcotics transaction is not entitled to a reduction for a minimal or minor role. United States v. Glasco, 917 F.2d 797 (4th Cir.1990). Therefore, the district court was correct in holding that Suarez did not perform a minor role as contemplated by U.S.S.G. § 3B.1.2.
 
 
 12
 Next, Rodriguez contends that he is entitled to a downward adjustment for a minor role, because he was an "assistant broker" rather than a buyer or seller. The evidence discloses that Rodriguez travelled to North Carolina, participated in several meetings to purchase the drugs, took delivery of a sample of marijuana, and assisted Suarez in delivering the approximately $150,000 to the agents. This evidence does not qualify Rodriguez for a downward adjustment for a minor role.
 
 
 13
 Further, Rodriguez claims that the case must be remanded for resentencing because the district court never made the required factual findings regarding his downward adjustment request, relying on United States v. Morgan, 942 F.2d 243, 245 (4th Cir.1991) (stating that Fed.R.Crim.P. 32(c)(3)(D) requires the district court to make a finding with respect to each objection a defendant raises to facts contained in a presentence report before it may rely on the disputed fact in sentencing). In this case, the district court specifically adopted the presentence report which included a recommendation that the court deny Rodriguez an adjustment for a minor role in the offense. Further, at the sentencing hearing, the court below remarked to counsel for Suarez, "That's a substantial position, to be in possession of the money that was necessary for the sale." The record clearly reveals that the district court attached significance to the fact that both Suarez and Rodriguez were in possession of the money necessary under the conspiracy agreement for the purchase of the drugs in question. The court's comments constitute a factual finding supporting the court's denial of Rodriguez' request for a downward departure for a minor role.
 
 
 14
 Garcia also argues that the district court erred in failing to grant him a downward departure for a minor role, contending that he merely introduced the buyer to the seller. However, Garcia negotiated with the agents for both cocaine and marijuana on several occasions. Garcia was an essential member of the conspiracy because Rodriguez had to take the informant to see Garcia in Texas before the trip to North Carolina could be made. Further, Garcia provided the informant with $4,000 in "good faith" money and discussed future large cocaine deals with the agents. As a result, Garcia's role was more than that of a minor participant in the conspiracy.
 
 
 15
 Rodriguez next argues that he should have received a downward departure for acceptance of responsibility under U.S.S.G. 3E1.1 which provides a two-level downward adjustment "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Rodriguez states that when he was arrested, he made a confession, he was cooperative with the probation officer, and he only went to trial on a technical defense that the appellants were not conspiring to possess any drugs but were "mere brokers."
 
 
 16
 Application Note 2 of U.S.S.G. 3E1.1 states that a downward departure for acceptance of responsibility does not apply to
 
 
 17
 a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pretrial statements and conduct.
 
 
 18
 Rodriguez did not testify at trial and, as stated in his brief, refused to admit that he and his co-defendants were conspiring to possess any drugs. This refusal constitutes a clear demonstration of a failure to make an affirmative acceptance of personal responsibility. The court below was correct in its application of this section of the Sentencing Guidelines.
 
 
 19
 Lastly, Garcia claims that the district judge erred in denying him a two-level downward adjustment for acceptance of responsibility. He argues that he accepted responsibility for commission of the marijuana transaction, but only contested whether that conduct constituted participation in a conspiracy. Yet, it is settled law that appellant is responsible for sentencing purposes for the reasonably foreseeable conduct of coconspirators. United States v. Williams, 986 F.2d 86 (4th Cir.1993). In his brief, Garcia contests whether this conduct constituted participation in a conspiracy and the downward adjustment is not given for only partial acceptance of responsibility.
 
 
 20
 Accordingly, the decisions of the district court on the issues discussed are
 
 
 21
 AFFIRMED.