[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 30, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-16276

_____

D. C. Docket No. 05-00044-CR-T-24-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY L. FORD,
a.k.a. BoBo,
a.k.a. Bo,
a.k.a. Big Head,
ANDREW M. TANNIS,
ELDRED B. HARDY,
a.k.a. Big Face,
a.k.a. Pie Face,
STEVEN R. HARDY,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(April 30, 2007)**

Before CARNES, WILSON and HILL, Circuit Judges.

PER CURIAM:

This is a multi-defendant appeal following the infiltration of a large drug ring operating out of a housing project in Tampa, Florida. The drug scheme involved obtaining powder cocaine from an overseas supplier in New Orleans and converting the powder into crack cocaine to sell throughout Tampa. Defendant Tony Ford lead the conspiracy. Brothers Eldred Hardy and Steven Hardy also participated. The fourth defendant, Andrew Tannis, was a crewman on a cruise ship docked in New Orleans. Tannis delivered powder cocaine to Astley Stewart, who ultimately supplied Ford and the Hardy brothers. The four defendants were convicted following a two-week jury trial. Ford and the Hardy brothers were sentenced to life imprisonment, and Tannis was sentenced to 121 months imprisonment. The four defendants raise numerous issues in this appeal, none of which are meritorious.

## I.

Ford raises four issues. He contends that the district court erred when it (1) violated his Sixth Amendment right to counsel; (2) erroneously denied his motion to dismiss based on an alleged Speedy Trial Act violation; (3) improperly denied his motion to dismiss for an alleged Petite violation; and (4) erred in estimating

the rate of conversion from powder cocaine to crack cocaine in calculating his sentence.

None of Ford's claims has merit. First, as to the Sixth Amendment claim, Ford had ample opportunity prior to trial to secure his own counsel. The district court properly denied his appointed counsel's motion to withdraw, which was filed less than a week before trial was scheduled to begin. See, e.g., United States v. Sexton, 473 F.2d 512, 513–14 (5th Cir. 1973).[1] Second, there was no Speedy Trial Act violation here because a federal detainer does not start the running of the seventy-day clock. See United States v. Skanes, 17 F.3d 1352, 1353 n.1 (11th Cir. 1994). Only the indictment or the defendant's first appearance triggers the statute. 18 U.S.C. § 3161(c)(1). As a result, Ford's trial began well within the seventy-day window, and no violation occurred.

Third, circuit precedent is settled that the Petite policy does not apply where, as here, there was no adjudication of guilt in the state court. United States v. Nelligan, 573 F.2d 251, 254–55 (5th Cir. 1978). Ford's state charges were dismissed on a technicality without a finding of guilt, so there was no requirement

---

[1] See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

that the government obtain the approval of the United States Attorney General to file the successive federal action. Finally, the court's method of estimating the conversion of powder to crack cocaine was immaterial. Ford already faced a mandatory life sentence under 21 U.S.C. § 841 (b)(1)(A) because he had two prior drug-related felony convictions. Thus, the amount of crack attributed to him by the court at the sentencing hearing did not affect the sentence imposed.

## II.

Eldred Hardy also contends that the district court made four errors. He contends that it erred (1) in denying his motion for acquittal or new trial based on insufficient evidence; (2) in admitting improper hearsay testimony at trial; (3) in admitting evidence of uncharged criminal conduct occurring before the date set out in the indictment; and (4) in violating his substantial rights through the cumulative effect of the its errors.

Like Ford's arguments, Eldred Hardy's claims have no merit. First, there was sufficient evidence presented at trial to support his conviction. We must take the evidence in the light most favorable to the verdict, United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006), and there was ample evidence linking Hardy to the larger conspiracy.

Second, there was no reversible error regarding the hearsay testimony

admitted at trial. As to Michael Reid's testimony, because it was cumulative any error that may have occurred in its admission was harmless. Coughlin v. Capitol Cement Co., 571 F.2d 290, 307 (5th Cir. 1978) ("The improper admission of hearsay testimony which is merely cumulative on matters shown by other admissible evidence is harmless error."). Even if Reid's testimony regarding Twan Lee's out-of-court statements should have been excluded, Reid also offered testimony of Eldred Hardy's own admissions directly linking him to Ford. As to the admission of the tape and transcript from the recorded drug deal, any error in admitting Reid's statements made directly to the agents via the body bug was harmless because this evidence was also cumulative. Id. Hardy only challenges part of the tape and transcript on hearsay grounds; he does not contest their authentication. Because Eldred was referenced by name in two other unchallenged portions of the recording, any error committed by admitting Reid's statements to the agents was harmless. The purpose of the recording was to link Eldred to the staged drug deal, and properly admitted portions of the tape and transcript did just that.

Third, the district court did not plainly err in admitting evidence of "uncharged conduct," because the government established that the earlier drugs sales in question occurred "reasonably" close to date set out in the indictment.

5

United States v. Pope, 132 F.3d 684, 688–89 (11th Cir. 1998); Russell v. United States, 429 F.2d 237, 238 (11th Cir. 1970) ("It seems well settled that an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient." (quotations omitted)).  The indictment charged conduct occurring "from at least in or around the Summer of 2003."  Thus, conduct occurring in February 2003 was "at least in or around" the date charged.  Finally, because there was little if any reversible error, there was no cumulative error amounting to a violation of Eldred Hardy's substantial rights.

**III.**

The third defendant, Steven Hardy likewise raises four issues.  He contends that the district court erred (1) in estimating the conversion rate of powder cocaine to crack cocaine in calculating his sentence; (2) in denying his motion for acquittal or new trial based on insufficient evidence; (3) in refusing to grant a mistrial based on an alleged Brady violation; and (4) in denying his motion for mistrial based on the testimony of Detective Mills, one of the agents involved in the case.

We are not persuaded.  First, like Ford, Steven Hardy was subject to a mandatory minimum life sentence under 21 U.S.C. § 841(b)(1)(A) because he had

6

two prior drug-related felony charges. Accordingly, the district court's method of converting powder cocaine to crack was immaterial to his sentence. Second, the evidence presented at trial was sufficient to sustain Hardy's conviction. His claim that the government relied on the questionable testimony of co-conspirators, drug dealers and users, and convicted felons is of no avail. We have repeatedly held that judging the credibility of witnesses is the responsibility of the jury. See, e.g., United States v. Parrado, 911 F.2d 1567, 1570–71 (11th Cir. 1990).

Third, no Brady violation occurred here. Steven Hardy did not prove any prejudice caused by the government's alleged failure to inform him that one of its witnesses has been granted use immunity. Additionally, the court allowed Hardy to recall the witness to ask any additional questions once he "knew" about the immunity, further dispelling any possible prejudice. See Routly v. Singletary, 33 F.3d 1279, 1285–86 (11th Cir. 1994) (noting that there is no Brady violation when defense counsel was aware of the grant of immunity and cross-examined the witness regarding that immunity).

Finally, Hardy's claim that Detective Mills' testimony necessitated a mistrial lacks merit. The trial court did not err in determining that Mills' testimony encompassed the recorded conversations between Hardy and Ford without implying that Hardy had been recorded conversing with any of the other

7

defendants.  And even if there was error, a mistrial is not warranted where, as here, there is other significant evidence of guilt that would reduce the likelihood that any improper testimony had a substantial impact on the jury.  United States v. Anderson, 782 F.2d 908, 916 (11th Cir. 1986).

**IV.**

The last defendant, Andrew Tannis raises five issues on appeal.  He contends that the district court erred (1) in refusing to grant a mistrial based on an alleged Brady violation; (2) in denying his motion for mistrial based on the improper testimony of Detective Mills; (3) in denying his motion for acquittal or new trial based on insufficient evidence; (4) in refusing to give a "mere presence" instruction specifically directed at Tannis' involvement in the scheme; and (5) in improperly instructing the jury that they could use the indictment to determine the quantity of drugs involved in the offense.

Like the three other defendants, Tannis has not raised any valid claim.  He makes two of the same arguments as Steven Hardy, and as noted above, neither claim has merit.  There was no prejudicial Brady violation because the defendants were given an opportunity to cross-examine the witness regarding the grant of use immunity.  Second, Detective Mills properly clarified any misstatement he made regarding Tannis' involvement in the recorded conversations.  Upon the court's

8

instruction, Mills narrowed the scope of his previous testimony and specified that Tannis was only recorded speaking to Stewart and not to any of the other defendants.

As to Tannis' third argument, there was ample evidence to support his conviction. Again, we must construe the evidence in favor of the verdict. Fourth, the district court properly read the jury the general conspiracy instruction, which included the statement that a defendant's mere presence at the scene cannot alone establish his involvement in the conspiracy. Tannis was not entitled to his own specific instruction; the standard instruction was sufficient. See United States v. Alvarez-Moreno, 874 F.2d 1402, 1413 (11th Cir. 1989) (noting that the district court must be granted discretion in framing jury instructions and that if the charge actually given covered the essence of the proposed instruction, no reversible error occurred).

Finally, the district court did not abuse its discretion in responding to the jury's question regarding the quantity of drugs implicated in the charged conduct. We are to consider the supplemental jury instruction in light of the entire jury charge, United States v. Johnson, 139 F.3d 1359, 1366 (11th Cir. 1998), and the jury was specifically told that the indictment was not to be considered evidence. The supplemental instruction was not erroneous.

9

## V.

**AFFIRMED**.