United States Court of Appeals,

Eleventh Circuit.

No. 94-2766.

UNITED STATES of America, Plaintiff-Appellee,

v.

Ronald Eugene MATHIS a.k.a. Romeo, a.k.a. Rome a.k.a. Homey, Defendant-Appellant.

Oct. 10, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-301-CR-T-17), Elizabeth A. Kovachevich, Chief Judge.

Before TJOFLAT, Circuit Judge, and RONEY and CAMPBELL[*], Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge:

Defendant Ronald E. Mathis (a/k/a "Romeo") was convicted of multiple drug counts and received a life sentence without parole. On appeal, he alleges that the government violated his right to a speedy trial under 18 U.S.C. § 3161 *et seq.,* that it unconstitutionally exercised its peremptory challenges, and that the district court erroneously admitted evidence from unconstitutional searches.

I.

On October 23, 1991, a 47-count indictment was returned against Mathis and eleven codefendants for their roles in a crack cocaine distribution organization that Mathis was alleged to have led in St. Petersburg, Florida in 1990 and 1991. Mathis was charged with multiple offenses including racketeering (both for

[*]Honorable Levin H. Campbell, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

dealing in drugs and participating in acts of violence), engaging in a continuing criminal enterprise, conspiring to distribute and distributing crack cocaine, and using a telephone to commit a crime. A superseding indictment, returned on April 15, 1992, added a murder count. In November 1992 Mathis's trial was severed from that of his codefendants. His trial began in February 1994. Mathis was convicted of racketeering, engaging in a continuing criminal enterprise, conspiracy, possession of cocaine with intent to distribute, and distribution of cocaine. He received a life sentence without parole. This appeal followed.

## II. Speedy Trial Act

Mathis contests the district court's rejection of his motion, filed on March 24, 1992, to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* Mathis argues that much of the period from late November 1991, when the last codefendant was arraigned,[1] to March 24, 1992, the date Mathis filed his speedy trial motion, counts as nonexcludable delay. As his motion was never renewed, there is no question of counting as delay any subsequent periods. *See United States v. Tinson,* 23 F.3d 1010, 1012 (6th Cir.1994); *United States v. Wirsing,* 867 F.2d 1227, 1230 (9th Cir.1989); *see also* 18 U.S.C. § 3162(a)(2) ("[t]he

_____

[1]In a multiple defendant case, the speedy trial clock begins to run when the last codefendant is indicted or arraigned. *United States v. Vasser,* 916 F.2d 624, 626 (11th Cir.1990) (citing 18 U.S.C. § 3161(h)(7)), *cert. denied,* 500 U.S. 907, 111 S.Ct. 1688, 114 L.Ed.2d 82 (1991). The record shows that the last of Mathis's codefendants were scheduled to be arraigned on November 22, 1991, but on that day the arraignment was continued to November 27. Because the record does not contain an explanation, and the difference in days is not material to our holding, we need not decide which date triggered the speedy trial clock.

defendant shall have the burden of proof of supporting such motion" for dismissal of the indictment on speedy trial grounds).

A defendant must be brought to trial within seventy days of his indictment or initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). However, certain delays resulting from pretrial motions and other contingencies that arise in the course of a criminal proceeding are excludable under the Act. *Id.* § 3161(h) & (h)(1)(F). Of importance here is the Act's ends-of-justice exclusion for delay "resulting from a continuance granted by a judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(8)(A). A district court's granting of an ends-of-justice continuance is reviewable for an abuse of discretion. *E.g., United States v. Vasser,* 916 F.2d 624, 627 (11th Cir.1990), *cert. denied,* 500 U.S. 907, 111 S.Ct. 1688, 114 L.Ed.2d 82 (1991).

Mathis had requested a continuance of the trial on November 25, 1991, and the trial was continued until January 29, 1992, making that period excludable from the seventy-day limit under the Act. *See United States v. Henry,* 698 F.2d 1172, 1173-1174 (11th Cir.1983). At issue here is the district court's further postponement of the trial on January 29, 1992. Mathis calls this postponement "indefinite" and says it was granted at the government's request. He denies that it amounted to an excludable

ends-of-justice continuance. Mathis accuses the government of seeking delay in bad faith. According to him, the government's true motive is reflected in its request for time to obtain a superseding indictment that only differed from the original by adding a murder count against him that had already been charged as a predicate act under the racketeering count, and by requesting the death penalty. These additions were eventually abandoned just before the beginning of jury selection in February 1994. By then, several former codefendants had agreed to testify against Mathis. Mathis says that the district court should have inquired into or held a hearing on why the government had not charged him earlier with the murder count and should have made findings, instead of simply stating, as it did, that the "interests of justice" covered its decision to postpone trial.

The transcript of the January 29th conference reveals that the government was not the primary force behind the continuance. It made no specific request for one. Rather, the court granted a continuance sua sponte—as the Act permits, *see* 18 U.S.C. § 3161(h)(8)(A). It also seems clear that neither side was ready for trial then, or so the court could reasonably surmise. At the January 29th conference, the district judge asked the government about the status of the case and what she could anticipate, to which the government responded that it was preparing a superseding indictment and awaiting permission from the Department of Justice to seek the death penalty. Mathis then complained of the government's failure to deliver promised discovery materials to the defense. The district court told the government to provide the

discovery materials by February 18 and to report back on the status of the superseding indictment and death penalty within a few weeks as well, since those matters could require additional counsel and preparation time for Mathis. With the attorneys' assistance, the court then assessed the trial time that would be needed and tried to establish a trial date when everyone, including the court, would be available. The judge settled on January 1993 and advised counsel that the date would be moved up if it became possible to do so. The court added that another status conference would be held in the "not-too-distant future," after the superseding indictment was issued. In response to defendant's objection to any continuance of trial, the court stated that "[t]he interest of justice under 3161 certainly does protect us[.]"

The last quoted remark reflects the court's intention, on its own motion, to continue the case under authority of section 3161(h)(8)(A). The court, it is true, did not adhere to the Act's requirement to "set[ ] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The reasons, however, are evident from the record, and we have held that a district court "need not enunciate its findings when it grants the continuance so long as there is sufficient evidence in the record indicating that it considered the factors identified in the statute when it granted the continuance." *Vasser*, 916 F.2d at 627. The factors the statute calls upon the court to consider include:

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(8)(B). "[G]eneral congestion of the court's calendar" is not a factor that operates to exclude delay resulting from such a continuance. *Id.* § 3161(h)(8)(C).

The transcript of the January 29th conference indicates that the court sufficiently took into account the relevant factors identified in section 3161(h)(8)(B), *supra.* *See United States v. McKay,* 30 F.3d 1418, 1420 (11th Cir.1994), *cert. denied,* --- U.S. ----, 116 S.Ct. 323, 133 L.Ed.2d 224 (1995); *see also United States v. Spring,* 80 F.3d 1450, 1456 (10th Cir.1996) ("Courts need not necessarily *expressly* conduct a balancing or use particular language" if it is " 'clear from the record that the trial court struck the proper balance when it granted the continuance.' ") (citations omitted), *petition for cert. filed* (U.S. June 25, 1996) (No. 95-9420). The court expressed concern with scheduling adequate preparation and trial time for this complex narcotics case involving multiple defendants. It set February 18 as the date for the handing over of discovery materials to defense counsel so that counsel would have time to review them with his client. *Cf. United States v. Burke,* 673 F.Supp. 1574, 1578 (N.D.Ga.1986) (need for a

continuance was "patently obvious" in light of lengthy indictment "naming 12 defendants in 36 counts alleging numerous conspiracies to import massive quantities of narcotics, and to launder large sums of money, of the 225 pretrial motions filed, and of the scope of discovery required"), *aff'd,* 856 F.2d 1492 (11th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3222, 106 L.Ed.2d 571 (1989). The court also recognized the prosecutor's wish for reasonable time to prepare a superseding indictment and to obtain approval to seek the death penalty; it specifically asked how much time would be needed, and accepted the prosecutor's response of two to three weeks. Although the court indicated concern with its own schedule as well, it did so in the context of inquiring about other attorneys' upcoming commitments, including the prosecutor's commitment to trying cases in this same court connected to this drug conspiracy (before the cases were consolidated and Mathis's was severed). *See Henry,* 698 F.2d at 1174 ("Appropriate consideration must always be given to a multiplicity of factors, *i.e.* adequate time for defense counsel to prepare, number of defendants, pending motions, anticipated trial time, possible severances, conflicts in schedules of judges and trial counsel, etc.").

Hence, while the district court did not summarize its reasons, the record indicates that the court took into account the material statutory factors when granting the continuance. Nor is there doubt that a continuance of limited duration rather than a mere indefinite delay was intended. Trial dates were discussed and a January 1993 date assigned. The court extended the discovery

deadline to a specific date and informed the parties and counsel that another status conference would be held following the superseding indictment. *See Spring,* 80 F.3d at 1457 ("The court did not specifically state that it was granting a continuance, yet that was indisputably the effect of its order vacating the scheduled trial date, pending appearance of new counsel[.]"). *But cf. United States v. Crawford,* 982 F.2d 199, 205 (6th Cir.1993). The court sought and received the government's estimate as to when it would know about the superseding indictment and death penalty. The superseding indictment was handed down on April 15; the defendants were arraigned on April 22; and the court held a further conference on April 24. In these circumstances, we find a valid ends-of-justice continuance, excludable under the Act, running through the handing down of the superseding indictment, which occurred in mid-April. *See Spring,* 80 F.3d at 1458 (open-ended continuance was warranted in light of complexity of the case, need for adequate preparation time, and fact that court set a new trial date).

Defendant's argument that, had the court made further inquiry, it would have discovered that the government was acting in bad faith, is speculative at best. The government freely admitted at the January 29th conference that the original racketeering count included, as a predicate act, the murder the government wanted now to charge separately. Its dropping of the murder count, along with others, two years later could be based on a host of considerations not known on January 29, 1992.

As the court's actions on January 29 amounted to the granting

of a valid ends-of-justice continuance, there was no speedy trial violation.  Mathis concedes that if a valid continuance were granted on January 29, there would be no violation of the Act.  We add that quite apart from the ends-of-justice continuance, a Speedy Trial Act violation was unlikely because of the pendency during the same period of pretrial motions and requests from Mathis and his codefendants.  *See* 18 U.S.C. § 3161(h)(7); *Vasser,* 916 F.2d at 626 ("A motion relating to one defendant tolls the speedy trial clock for all co-defendants.") (citations omitted).

### III. Peremptory Challenges

Mathis, who is African-American, argues that the prosecutor unconstitutionally used peremptory strikes to exclude an African-American man and a Hispanic woman from the panel of potential jurors.  We find no constitutional violation.

The prosecutor used four peremptory challenges, one to strike one of two African-American members on the panel and one to strike the only Hispanic member.  Assuming without deciding that defendant presented a prima facie case of purposeful discrimination, *see Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1722-23, 90 L.Ed.2d 69 (1986); *United States v. Williams,* 936 F.2d 1243, 1245 (11th Cir.), *cert. denied,* 502 U.S. 993, 112 S.Ct. 612, 613, 116 L.Ed.2d 635 (1991) *and* 502 U.S. 1119, 112 S.Ct. 1239, 117 L.Ed.2d 472 *and* 503 U.S. 912, 112 S.Ct. 1279, 117 L.Ed.2d 504 (1992), we hold that the district court did not err in accepting the government's race-neutral explanations and concluding that defendant had not carried his burden of proving purposeful discrimination.  Only brief comments are necessary in light of

well-established precedent.

The record shows that an African-American panel member, Mr. Johnson, was challenged because he worked at a funeral home across from Mathis's car wash (referred to in the indictment as purportedly Mathis's legitimate place of business), had his personal car washed there regularly and other business cars washed there on occasion, and was familiar with people who worked there and might be called as witnesses. Mr. Anderson did not know Mathis personally, but knew of him as "Romeo" and also lived fairly close to the car wash. The district judge conducted her own inquiry of Mr. Anderson and accepted the government's concern about possible associational links to the defendant. Under these circumstances, there was no clear error in granting the peremptory challenge. *See Williams,* 936 F.2d at 1247.

The record shows that Ms. Perera, who is Hispanic, was removed because a close family member of hers had had a cocaine conviction. There was no clear error in allowing the strike in this case. *See United States v. Bennett,* 928 F.2d 1548, 1552 (11th Cir.1991) ("familial association with someone convicted on drug charges [is] clearly a weighty and racially neutral reason"). Even if we were to consider defendant's new argument on appeal—that purposeful discrimination was shown by the government's striking of the Hispanic panel member without also striking a white panel member whose son had had a criminal conviction—our decision would not change. The latter's conviction did not involve controlled substances, making his case insufficiently similar to justify an inference of purposeful discrimination by the government. *See*

*Williams,* 936 F.2d at 1246.

Defendant further insists that purposeful discrimination was shown by the government's unsuccessful attempt to change venue from Tampa to Fort Myers (where apparently fewer racial minorities are registered voters). We find no merit in this contention.

### IV. Suppression of Evidence

#### (a) *Intercepted Cordless Telephone Conversations*

Mathis challenges the district court's refusal to suppress evidence from cordless telephone interceptions he believes were unlawful. Mathis filed a pretrial motion to suppress this and other evidence, which the magistrate judge denied.

The government introduced at trial numerous tapes of conversations made on cordless and cellular telephones from Mathis's residence. St. Petersburg Police Department detectives intercepted these communications from June through October 1991, without Mathis's consent and without prior judicial approval. [2] Following a denial of Mathis's pretrial motion to suppress the recordings, the district court, on the first day of trial, allowed the government to begin admitting them over Mathis's objection. His objections at this time were based on the attorney-client privilege (with respect to one conversation) and Florida constitutional law governing the nonconsensual interception of cordless telephone communications. In rejecting the latter ground, the court said, "[t]here's no reasonable expectation of privacy on a cordless phone." It allowed Mathis's request for a standing

---

[2]The record indicates that court approval had been obtained to operate pin registers.

objection to the admissibility of all such communications.[3]

We agree with the district court to the extent that, at the time Mathis's conversations were intercepted, federal statutory law recognized no reasonable expectation of privacy on a cordless telephone.[4]  Mathis, in fact, has never argued that *federal*

---

[3]The government contends that Mathis waived this issue, having conceded at the suppression hearing the absence of a legal basis for requiring a warrant to intercept cordless telephone communications (and pressed only the matter of cellular phone communications).  Thereafter, he did not supplement the record with factual support as the magistrate judge had allowed, or object to the magistrate's report and recommendation on any wiretap-related ground.  At trial, Mathis's oral motion asserted the protection of the attorney-client privilege (for one communication) and also mentioned, with respect to cordless telephones, the broad right of privacy under the Florida Constitution recognized just a few weeks earlier by a state appellate court.

> Because the district court chose to consider and to resolve on the merits Mathis's trial motion claiming a reasonable expectation of privacy in cordless telephone conversations, we review the substance of that ruling. *See United States v. Crosby,* 739 F.2d 1542, 1548 (11th Cir.) (citing *United States v. Marx,* 635 F.2d 436, 440-441 (5th Cir. Unit B 1981) and *United States v. Contreras,* 667 F.2d 976, 978 n. 2 (11th Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982)), *cert. denied,* 469 U.S. 1076, 105 S.Ct. 576, 83 L.Ed.2d 515 (1984); *see also United States v. Vasquez,* 858 F.2d 1387, 1389 (9th Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 978 *and* 489 U.S. 1029, 109 S.Ct. 1161, 103 L.Ed.2d 220 (1989);  3 Charles Alan Wright, Federal Practice and Procedure: Criminal 2d § 673, at 769 & n. 57 (1982) (citing cases for the proposition that "if the district court entertains the belated motion and decides it on the merits, it cannot be argued on appeal that it had been waived[ ]").

[4]*See, e.g., Askin v. McNulty,* 47 F.3d 100, 103 (4th Cir.), (before Congressional amendments in 1994, cordless telephone communications were "neither a *wire* nor *electronic* communication" under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, and "[v]irtually every court to have faced the question of whether cordless phone conversations were *oral* communications under [18 U.S.C.] § 2510(2) answered in the negative[ ]") (emphasis added) (citations omitted), *cert. denied,* --- U.S. ----, 116 S.Ct. 382, 133 L.Ed.2d 305 (1995).

statutory or constitutional law at the time these recordings were made required officers to obtain prior judicial approval to intercept cordless telephone communications. He has instead focused on the right of privacy in the Florida Constitution, which he says bars the interception, without consent or prior judicial approval, of cordless telephone communications made from his residence. *See Mozo v. State,* 632 So.2d 623, 632-634 (Fla.Dist.Ct.App.1994) (holding that "the random interception of a cordless phone communication, without sufficient cause or suspicion, constitutes an unreasonable interception of a private communication in violation of article I, section 12," and that "under article I, section 23, a person's private conversations over a cordless telephone are presumptively protected from government interception" though a showing of a compelling state interest may overcome the presumption), *aff'd* on state statutory grounds, *State v. Mozo,* 655 So.2d 1115, 1116 (Fla.1995).

Assuming without deciding that Mathis's interpretation of Florida law is correct, the fact remains, " "that federal law governs the admissibility of tape recordings in federal criminal cases,' and complaints that the evidence was obtained in violation of state law are of no effect." *United States v. Butera,* 677 F.2d 1376, 1380 (11th Cir.1982) (rejecting that warrantless tape recordings should have been suppressed under Florida constitutional law because state and local officials were involved in the investigation) (quoting *United States v. Nelligan,* 573 F.2d 251, 253 (5th Cir.1978)), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *accord United States v. Workman,* 80 F.3d 688,

695 (2d Cir.1996). Defendant's citation to *United States v. Bascaro,* 742 F.2d 1335 (11th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 3477, 87 L.Ed.2d 613 *and* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985), is inapposite, as that case held that state and federal law requirements "govern a federal district court's determination of the validity of wiretap warrants obtained by state law enforcement officers in state courts." *Id.* at 1347. That ruling—based on a provision of the federal wiretap statute, 18 U.S.C. § 2516, which allows state courts to authorize the interception of wire or oral communications in conformity with 18 U.S.C. § 2518 and applicable state law—is entirely consistent with the general rule that federal law determines the admissibility in federal criminal cases of communications intercepted by a state or local officer. *See Nelligan,* 573 F.2d at 253-254.

We reject, therefore, Mathis's claim of error in the district court's admission of the cordless telephone recordings.

(b) *Searches and Seizures*

In his appellate brief, Mathis asserts error in the district court's admission of evidence alleged to be the product of searches of his residence on March 22, 1990, and November 1, 1991. Mathis's suppression motion raising these two matters was the subject of a pretrial hearing before the magistrate judge, who denied the motion. After careful consideration of the briefs and record, the magistrate judge's memorandum, and the relevant law, we find no merit in either claim of error, and see no need to expound further as to them.

Mathis raises a closer claim regarding evidence uncovered by

police on November 1, 1991, in a warrantless search of a detached garage on the premises where Mathis's mother resided, next door to him.[5] The magistrate judge determined that Mathis's mother had consented to this search and that she had the authority validly to do so. In making this determination, the magistrate judge credited the police officers' factual version of what had occurred, including that Mathis's mother was entirely cooperative and consented to the officers' searching of her house and the garage, and had told an officer whom she knew personally that the garage was hers. These and other facts found by the magistrate judge amply support, in our view, an objectively reasonable belief by the searching officers that Mathis's mother had authority to consent to a search of the garage. *See Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990); *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974); *cf. United States v. Fernandez,* 58 F.3d 593, 598 (11th Cir.1995) (where a defendant told police that a trailer belonged to his codefendant, it was reasonable for officers to believe that the codefendant had authority to consent to a search); *United States v. Kinney,* 953 F.2d 863, 866-867 (4th Cir.), *cert. denied,* 504 U.S. 989, 112 S.Ct. 2976, 119 L.Ed.2d 595 (1992). We reject Mathis's contention that the district court should have suppressed the evidence found in the garage.

Mathis's conviction is affirmed.

---

[5]Two warrantless searches of the garage were conducted that day, with only the second revealing information that aided the officers' investigation and enabled them to obtain a search warrant for the garage, where they subsequently found a safe hidden by Mathis containing thousands of dollars.