[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13286
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 16, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:10-cr-00055-WKW-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THERRAL HATFIELD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 16, 2012)

Before BARKETT, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Therral Hatfield appeals his convictions for two counts of kidnaping, in

violation of 18 U.S.C. § 1201(a)(1), and one count of using a firearm during a

crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Hatfield contends that (1) his rights under the Speedy Trial Act were violated, (2) there was insufficient evidence to sustain his conviction, and (3) the district court abused its discretion by excluding the testimony of one of his witnesses.

I.

We review a claim under the Speedy Trial Act *de novo*, but a district court's factual determinations on excludable time are reviewed for clear error. *United States v. Dunn*, 345 F.3d 1285, 1288 (11th Cir. 2003). We review the grant of an ends-of-justice continuance for an abuse of discretion. *United States v. Mathis*, 96 F.3d 1577, 1579 (11th Cir. 1996).

Under the Speedy Trial Act, a trial is required within 70 days of the filing of an information or indictment or the first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). Certain delays can be excluded, however, including a delay as a result of a continuance requested by "defendant or *his counsel*," if the ends-of-justice served by the continuance outweigh the best interest of the public and defendant in a speedy trial, considering the unusual or complex nature of the case or the need of counsel to effectively prepare. 18 U.S.C. § 3161(h)(7)(A), (7)(B) (emphasis added).

An ends-of-justice continuance is valid if the court sufficiently took into account the relevant statutory factors. *Mathis*, 96 F.3d at 1580. Concern for scheduling adequate preparation and trial time for a complex case is a relevant consideration. *Id.* at 1581. If defense counsel requires additional time to prepare, especially if additional witnesses need to be interviewed, a superseding indictment may be forthcoming, and pending motions need to be filed or reviewed, a trial judge must be given broad discretion in attempting to comply with the Speedy Trial Act and the exclusions thereto. *United States v. Henry*, 698 F.2d 1172, 1173-74 (11th Cir. 1983) (affirming the exclusion of a continuance at the request of defense counsel).

The district court did not abuse its discretion when it granted an ends-of-justice continuance to Hatfield's defense counsel. Counsel made it clear that he was engaged in a complex, multi-state investigation and needed additional time to effectively prepare. The parties do not dispute that, if the continuance was a valid exclusion under the Speedy Trial Act, that there was no Speedy Trial Act violation when the case was ultimately tried, in November 2010. Hatfield's primary objection to the continuance was that the defendant himself did not consent to it. However, the plain language of the Speedy Trial Act makes clear that a continuance requested by defendant's counsel, if serving the ends-of-justice, can

be excluded from the Speedy Trial Act calculation. Hatfield's argument that he was unaware of, and did not agree to, the continuance is therefore unpersuasive, as the district court granted the continuance in Hatfield's own interest– in order to allow Hatfield's attorney sufficient time to prepare a defense. Accordingly, we affirm on this ground.

## II.

A district court must grant a "judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). We review *de novo* the sufficiency of evidence to support a conviction. *United States v. Ortiz,* 318 F.3d 1030, 1036 (11th Cir. 2003). We will affirm a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Hunt,* 187 F.3d 1269, 1270 (11th Cir. 1999). We review the evidence in the light most favorable to the government and accept all reasonable inferences in favor of the jury's verdict. *United States v. Chirinos,* 112 F.3d 1089, 1095 (11th Cir. 1997).

A person is guilty of kidnaping under federal law if they (1) unlawfully seize, confine, kidnap, or carry away and (2) hold for ransom or reward *or otherwise*, (3) any person willfully transported in interstate or foreign commerce.

18 U.S.C. § 1201(a)(1) (emphasis added).  A person is guilty of using a firearm during a crime of violence[1] if they possess a firearm in furtherance of any such crime. 18 U.S.C. § 924(c)(1)(A).

Here, there was sufficient evidence presented at trial to sustain the convictions.  The first victim (L.H.), a female adult who was Hatfield's former fiancé, testified that she and her daughter, the second victim, were kidnaped at gunpoint, held against their will, and transported across state lines by Hatfield.[2]  This testimony was corroborated by several additional witnesses, including a husband and wife couple who encountered the victims at a gas station where L.H. passed the wife a note indicating that she was being kidnaped.[3]  Another witness, a

---

[1] Although not challenged on appeal, kidnaping is considered a crime of violence. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280, 119 S.Ct. 1239, 1243, 143 L.Ed.2d 388 (1999).

[2] Specifically, L.H. explained that on the day of the kidnaping, her son was with Hatfield, who had refused to give him back.  After some back and forth, Hatfield agreed to leave the son with one of his friends for L.H. to pick up.  When she arrived at the spot where she was supposed to pick up her son, she called a friend because she was nervous.  As she stopped to pick up her son, the man with her son pulled out a firearm, got in the car, and told her to drive down a few houses, at which point Hatfield emerged.  Hatfield entered the car and the original man left.  He forced L.H. to drive to a gas station, where they filled up.  L.H. testified that neither she nor her daughter were in the car voluntarily.

After getting gas, they got on the interstate heading east.  According to L.H., at some point after additional stops, the car needed gas. During that gas stop, L.H. asked a woman for help and left a note in the restroom with a description of her car, asking for help.

[3] Specifically, Carol Conley testified that she was traveling along I-65 when she stopped at a gas station.  She went into the bathroom, and encountered a woman, identified as L.H., with a young boy and girl.  L.H. stated she was being kidnaped, and wanted to give Ms. Conley a note with her name, tag number, and other information so that Ms. Conley could give it to the police.  Ms. Conley never got the note, however.  During her encounter, the victim seemed very calm.

friend of Hatfield, testified that Hatfield phoned him on the date of the incident, and indicated over the phone that L.H. and the child were being held against their will.[4]

The testimony of these witnesses established the elements of the substantive offenses. We leave credibility determinations within the exclusive province of the jury. *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997). A jury is free to believe or disbelieve witnesses, and we will not disturb a jury's credibility determination unless the testimony is incredible as a matter of law. *Id.* Therefore, the evidence was sufficient to convict Hatfield and we affirm on this ground.

### III.

Hatfield argues that the district court erred in excluding the testimony of Officer Burgamy. According to the defense, the testimony of Burgamy was "crucial to [the] theory of the case," because the jury could have decided that the

---

Mike Conley, Carol Conley's husband, also testified at trial. He testified that, after stopping at a gas station, his wife returned from the restroom and told him a woman had approached her and asked for help because she was being kidnaped by her boyfriend. Mr. Conley entered the gas station and noticed a man who was later identified as Hatfield. He called the sheriff's department and gave them what he thought was the tag number of the car the man was driving. At some point, a note was recovered at the gas station, which Mr. Conley believed to be a ransom or help note.

[4] Specifically, Hatfield's friend, Barry Smith testified that he received a phone call from Hatfield on the date in question stating that he had his family, L.H. and his son, with him, and his "life [was] over." Hatfield told Smith that his family was "not really" with him willingly. Smith testified that he also overheard L.H. say that she did not want to die.

lack of distress displayed by the victim implied by Burgamy's testimony would have demonstrated that he and the victim were on a family outing. It also would have countered the testimony of Barry Smith.

We review evidentiary rulings for an abuse of discretion. *United States v. Lyons*, 403 F.3d 1248, 1255 (11th Cir. 2005). "An evidentiary ruling will stand unless the complaining party has shown a substantial prejudicial effect." *United States v. Breitweiser,* 357 F.3d 1249, 1254 (11th Cir. 2004) (quotation omitted). A district court is free to exclude evidence that is not relevant, or relevant evidence whose probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Lyons*, 403 F.3d at 1255 (*citing* Fed.R.Evid. 403).

Here, the district court concluded that Burgamy's proffer, which was made outside the presence of the jury, indicated that there was almost nothing connecting his testimony to the events in question. According to the record, Burgamy could not remember the exact date or location of his alleged encounter with Hatfield. The encounter he remembered involved a man, a woman, and one child, as opposed to the two children that were with Hatfield and the victim. He also remembered the man he saw looking different than Hatfield, leading him to speculate that the event he observed did not, in fact, involve Hatfield. He

7

remembered the small boy wearing different clothes than the boy with Hatfield was wearing.

Even assuming, arguendo, that Burgamy did observe Hatfield and the victim that day, his testimony would have added nothing to the case. There was already testimony that the victim seemed calm. Burgamy also testified that the entire encounter lasted about three seconds, giving him very little time to observe anything of substance.

**AFFIRMED.**